OPINION
 

 Opinion by
 

 Justice ROSS.
 

 Quinton Wade Wright was convicted by a jury of indecency with a child by sexual contact.
 
 [1]
 
 The jury assessed Wright’s punishment at five years’ imprisonment, and he was sentenced accordingly.
 

 Wright appeals, alleging the trial court erred: 1) in allowing the State to introduce evidence he had taken a polygraph examination, 2) in admitting into evidence a videotaped forensic interview of the victim, and 3) in failing to admit evidence about other allegations of sexual misconduct made by R.C. against other men. We reverse and remand for a new trial based on Wright’s first point of error. We discuss Wright’s second point of error in the interest of justice, and we find that error was not preserved in connection with his third point of error.
 

 Background Facts
 

 The sufficiency of the evidence is not challenged. Briefly, Wright’s stepdaughter, R.C., testified Wright molested her on two occasions: once in the car when he reached through either her shirt sleeve or a hole in her shirt and touched her breast; and in their home while she sat on a couch and Wright sat on the floor, and he reached beneath her shorts and underwear and touched her vagina.
 

 Standard of Review for Admission of Evidence
 

 The admission of evidence is a matter within the discretion of the trial court.
 
 Avila v. State,
 
 18 S.W.3d 736, 739 (Tex.App.-San Antonio 2000, no pet.). Accordingly, the trial court’s admission of evidence is reviewed under an abuse of discretion standard.
 
 See Montgomery v. State,
 
 810 S.W.2d 372, 379-80 (Tex.Crim.App.1990). A trial court abuses its discretion when it acts without reference to proper guiding rules or principles, and therefore acts arbitrarily and unreasonably.
 
 See In re B.N.F.,
 
 120 S.W.3d 873, 877 (Tex.App.-Fort Worth 2003, no pet.).
 

 
 *224
 
 Evidence of Polygraph Examination
 

 The State told the jury in its opening statement that the investigator in this case offered Wright the opportunity to take a polygraph examination. Wright objected, and a bench conference was held. Wright argued that the prejudice of any mention of a polygraph examination outweighed its probative value and that, if the jury was not told Wright had passed the examination, it would assume he had failed it. After being assured by the State that the results of the examination would not be disclosed to the jury, the trial court overruled Wright’s objection. The State resumed its opening statement, telling the jury, “by the way, polygraph examination results are not admissible in any courtroom in the State of Texas. The results will not [be] admitted today. Okay? And that needs to be clear. That’s not something that’s going to be evidence.”
 

 Burt Golden testified he administered a polygraph examination to Wright. Wright objected to Golden’s testimony and to the State’s reference to the polygraph examination. In a hearing outside the presence of the jury, the trial court overruled Wright’s objection, but admonished the State that the results of the polygraph examination were not to be divulged. The court then granted Wright’s request for a “running objection regarding anything about the polygraph examination.” Golden then testified in the presence of the jury that, as part of his testing procedure, he generally asks the person to whom the examination is being administered a series of “pre-test” questions. During the pretest interview of Wright, Wright told Golden he had once reached through R.C.’s shirt and touched her skin, but not her breast.
 

 Gerry Allen, an investigator for the sheriffs office, testified that he was the one who offered Wright the opportunity to take a polygraph examination and that he transported Wright to and from the examination site. He testified that, on the way back from this examination, Wright talked about R.C. and her sister walking around the house without shirts on and with their shorts pulled up in a provocative way.
 

 A trial court may not admit polygraph examination evidence or consider it for any purpose.
 
 Buckley v. State,
 
 46 S.W.3d 333, 336 (Tex.App.-Texarkana 2001, pet. dism’d, untimely filed). The United States Supreme Court has written, “there is simply no consensus that polygraph evidence is reliable.”
 
 United States v. Scheffer,
 
 523 U.S. 303, 309, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998). However, the Texas Court of Criminal Appeals has held that, where a witness gives an unresponsive answer which mentions a polygraph test but does not mention the results of such test, there is no error in failing to grant a mistrial where the objection has been sustained and the jury instructed to disregard.
 
 Richardson v. State,
 
 624 S.W.2d 912, 914-15 (Tex.Crim.App. [Panel Op.] 1981).
 

 In
 
 Buckley,
 
 we described a two-step analysis in considering the propriety of questions eliciting testimony concerning a polygraph examination: “(1) whether the question exhibited bad faith by being designed to elicit that a polygraph was taken or what the results of that polygraph were; and (2) whether the effect of the evidence is to impeach the defendant’s defensive theory or to bolster the state’s case.”
 
 Buckley,
 
 46 S.W.3d at 337. The girlfriend of the defendant in that case testified, in relating things Buckley had said to her, that Buckley accused her of telling people he had failed a polygraph test. The trial court overruled the defense’s motion for mistrial and instructed the jury to disregard the statement. Finding that the “statement d[id] not reflect the results of
 
 *225
 
 such a test or even whether Buckley took such a test,” we held the witness’ inadvertent statement was properly cured by the trial courts instruction to disregard and overruled the point of error.
 
 Id.
 

 Where the defense insists on a mistrial, the sufficiency of an instruction to disregard polygraph evidence generally depends on whether the results of the examination were revealed to the jury. In
 
 Sparks,
 
 the state called a rebuttal witness, who had been accused by Sparks of committing the burglary for which Sparks was on trial.
 
 Sparks v. State,
 
 820 S.W.2d 924, 927 (Tex.App.-Austin 1991, no pet.). In
 
 Stewart,
 
 the court noted that a reviewing court shall consider the circumstances in which the polygraph evidence is admitted. “[I]t is improper to allow evidence even implying that such a test was taken if the effect of such evidence is to implicitly impeach the defendant’s testimony or defensive theory, or to bolster the State’s case.”
 
 Stewart v. State,
 
 705 S.W.2d 232, 234 (Tex.App.-Texarkana 1986, pet. ref'd). In
 
 Stewart,
 
 the state was allowed to introduce an investigator’s testimony that an individual other than Stewart had submitted to a polygraph examination, and as a result, that person “was cleared and charges were not filed” against him.
 
 Id.
 
 at 233.
 

 The instant case is markedly different from those described above. Here, the State was allowed, over Wright’s objections, to specifically point out that Wright had taken a polygraph examination. The cases cited above address situations where a witness inadvertently mentions that a polygraph test was administered. The issue here is not whether the results of the polygraph test were made known to the jury, or whether
 
 Buckley’s
 
 “two-step” analysis should even be applied. Rather, the issue is whether evidence was presented that Wright took a polygraph examination and whether such evidence operated to prejudice his right to a fair trial. Whether the State acted in “bad faith” is not an adequate analysis in light of the circumstances of this case. Letting a jury know that Wright submitted to a polygraph examination, then leaving the jurors to their own conclusions on whether he was shown to be deceptive or truthful in that examination, is not acceptable. In light of the consistent holdings addressing the inadmissibility of polygraph evidence, we hold that the affirmative and intentional presentation of polygraph evidence that was permitted in this case was error.
 

 This holding does not mean the statements made by Wright to the polygraph examiner during the pretest interview and to the investigator on the way home were not admissible. Statements made during a polygraph pretest interview, during the polygraph examination itself, or during an interview after the examination, may be admissible evidence, but the proper procedure for introducing such evidence before the jury is to redact from such evidence all references to the polygraph examination. This was the course taken and approved in Hoppes.
 
 [2]
 
 There, the state sought to impeach Hoppes with statements made to the polygraph examiner. During the examination, Hop-pes told the examiner the lights of a car at the murder scene were pointed one way; at trial, Hoppes said the car and its lights faced another direction. The trial court allowed the state to introduce the inconsistent statement made by Hoppes during the polygraph examination, but redacted all references to the polygraph examination itself and specifically admonished the parties not to discuss the polygraph examination itself.
 
 Hoppes,
 
 725 S.W.2d at 536. By following this procedure in the instant
 
 *226
 
 case, Wright’s statements to Golden and Allen could have been admitted without disclosing the fact that a polygraph examination was taken.
 

 We now turn to a harm analysis. In our review of nonconstitutional error, we are to disregard errors, defects, irregularities, or variances that do not affect substantial rights of the accused. Tex. R.App. P. 44.2(b). A “substantial right” is affected when the error had a substantial and injurious effect or influence in determining the jury’s verdict.
 
 King v. State,
 
 953 S.W.2d 266, 271 (Tex.Crim.App.1997);
 
 see
 
 Tex.R.App. P. 44.2(b). If, on the record as a whole, it appears the error “did not influence the jury, or had but a slight effect,” we must conclude the error was not harmful and allow the conviction to stand.
 
 Johnson v. State,
 
 967 S.W.2d 410, 417 (Tex.Crim.App.1998).
 

 We cannot say, with confidence, that the State’s discussion of the polygraph examination, and having two witnesses testify about that examination, did not influence the jury or had but a slight effect. Much has been made of the inherent unreliability of polygraph examinations, and hence their inadmissibility in criminal trials in Texas. Despite the cautions of both the trial court and the attorney for the State, we find that broadcasting to the jury that Wright was given a polygraph examination presented too great a danger that the jury speculated on the examination’s outcome. Such speculation is especially likely in a case like this one where there is no scientific evidence substantiating the conviction and where the validity of that conviction is largely dependent on the credibility of the witnesses. Under these circumstances, our confidence in the outcome of this trial is undermined. Finding harm, we sustain Wright’s first point of error and reverse the judgment and remand this case for a new trial.
 

 Evidence of the Videotaped Interview
 

 In his second point of error, Wright complains the trial court erred when it allowed the State to introduce a videotaped interview of the child victim. Kathy Smedley testified for the State. She runs the Northeast Texas Children’s Advocacy Center and is trained and certified to conduct forensic interviews with children. Smedley testified she is a licensed professional counselor and certified marriage and family counselor. She testified that the forensic interview she conducts is used to preserve evidence, reduce the number of times a child must be interviewed about potentially traumatic abuse, and is also used to determine whether to refer the child to mental health services or for medical treatment, such as a sexual assault nurse examination. In this case, R.C. was referred for psychological counseling. Specifically, Smedley said she consulted with Tamika Hughes, one of the local Child Protective Services caseworkers, about arranging counseling services for R.C. Smedley said she specifically ruled out having R.C. submit to a sexual assault nurse examination because nothing in the child’s interview suggested penetration or anything which would lead to discernible evidence being discovered in such an examination.
 

 The State answered Wright’s trial objections by arguing that the videotape was admissible under the hearsay exception noted in Texas Rule of Evidence 803(4),
 
 [3]
 
 
 *227
 
 where statements made for purposes of medical diagnosis are excepted from the rule precluding the admission of hearsay. The trial court overruled Wright’s objections and allowed Smedley to discuss the videotape and allowed the State to play the videotape for the jury.
 

 The medical treatment exception to the hearsay rule (i.e., Tex.R. Evid. 803(4)) is based on the assumption that the patient appreciates that the effectiveness of the treatment may depend on the accuracy of the information provided to the physician.
 
 Fleming v. State,
 
 819 S.W.2d 237, 247 (Tex.App.-Austin 1991, pet. ref'd). There is no requirement that a witness expressly state that the hearsay declarant recognized the need to be truthful in her statements for the medical treatment exception to apply. Instead, “the reviewing court must look to the record to see if it supports a conclusion that the young child understood why she needed to be honest when speaking to the caregiver.”
 
 Beheler v. State,
 
 3 S.W.3d 182, 188-89 (Tex.App.Fort Worth 1999, pet. ref'd).
 

 Here, however, there is no evidence that R.C., who was thirteen years old at the time of her interview, understood that the effectiveness of any counseling she might receive from Smedley depended on the accuracy of the information she provided. Smedley discussed with R.C. the difference between telling the truth and telling a he, but only in the context of gathering accurate information. At no time was R.C. made aware of the importance of this difference in Smedley being able to effectively counsel, diagnose, or assess her. As for R.C.’s understanding of the purpose of the interview, Smedley testified she did not know what R.C. thought about why she was at the forensic interview. While there is evidence Smedley considered that the interview was for assessment and possibly diagnostic purposes, such intent on the part of the interviewer does not provide the guarantees of trustworthiness required when dealing with hearsay. Without anything to indicate that R.C. understood the purpose of the interview, and that the importance of being truthful was so Smed-ley could effectively assess or diagnose her, it was error to admit the videotaped statements.
 

 Evidence of Other Allegations of Sexual Misconduct
 

 In his final point, Wright complains the trial court stopped him from questioning the State’s witnesses about other allegations of sexual misconduct R.C. made against other individuals. Wright objected to this limitation under Texas Rules of Evidence 403, 404(b), 412, and 608.
 

 On appeal, Wright contends the trial court’s limitation deprived him of his Confrontation Clause rights guaranteed by the Sixth Amendment to the United States Constitution. Wright did not make a Sixth Amendment objection at trial. The point of error on appeal must correspond or comport with the objection made at trial.
 
 Dixon v. State,
 
 2 S.W.3d 263, 273 (Tex.Crim.App.1998);
 
 Thomas v. State,
 
 723 S.W.2d 696, 700 (Tex.Crim.App.1986). Where a trial objection does not comport with the issue raised on appeal, the appellant has preserved nothing for review. Tex.R.App. P. 33.1(a);
 
 Ibarra v. State,
 
 11 S.W.3d 189, 197 (Tex.Crim.App.1999). Wright did not fairly and specifically object to the exclusion of this evidence on the constitutional due process basis he now urges on appeal. He has not preserved error. His third point of error is overruled.
 
 See Gutierrez v. State,
 
 71 S.W.3d 372, 378-79 (Tex.App.-Amarillo 2001, pet. ref'd).
 

 Conclusion
 

 Because we hold the admission of polygraph examination evidence was harmful
 
 *228
 
 error, we reverse the judgment and remand the case for a new trial.
 

 [1]
 

 . Tex. Pen.Code Ann. § 21.11(a)(1) (Vernon 2003).
 

 [2]
 

 .
 
 Hoppes v. State,
 
 725 S.W.2d 532, 536 (Tex.App.-Houston [1st Dist.] 1987, no pet.).
 

 [3]
 

 . Rule 803(4) excepts from the rule disallowing hearsay statements into evidence "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.”