# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-04-00175-CR
NO. 03-04-00178-CR

**Robert Joe Donaldson, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT
NOS. 8931 & 9233, HONORABLE GUILFORD L. JONES, III, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

The district court adjudicated Robert Joe Donaldson guilty of three counts of aggravated sexual assault of a child and revoked his community supervision for the offenses of indecency with a child by exposure and sexual performance by a child.[1] *See* Tex. Pen. Code Ann. §§ 22.021(a)(i)(B) (West Supp. 2004-05); 21.11(a) (West 2003); 43.25(b) (West Supp. 2004-05). Donaldson was sentenced to sixty-four years in prison for the aggravated assault convictions, to be served consecutively with ten years for the violation of his community supervision. He appeals both the adjudication of guilt and the revocation of his community supervision contending (1) that there is legally and factually insufficient evidence to support the State's allegations, (2) that the trial court erred by admitting evidence of a polygraph examination, and (3) that the trial court abused its

---

[1] As part of a plea agreement, Donaldson had pleaded guilty to all charges in exchange for ten years' deferred adjudication and ten years' shock probation.

discretion by denying his motions to quash the State's motions to adjudicate guilt and revoke community supervision. We affirm the district court's judgments.

## FACTUAL BACKGROUND

Donaldson pleaded guilty to committing several sexual offenses stemming from his abuse of an eight-year-old girl. As part of the agreement, he was placed on ten years' deferred adjudication for some of the offenses and ten years' shock probation for others. Among the conditions of his community supervision were that Donaldson:

> Attend, participate and complete a psychiatric and/or psychological counseling program, with a licensed sex offender provider, as directed by the Probation Officer and pay the cost of same. Remain in said program until successfully discharged by the sex offender provider.

He was also required to "abide by all treatment rules of the sex offender provider."

By all accounts, Donaldson generally complied with the terms and conditions of his community supervision. The State's allegations focused on Donaldson's unsuccessful discharge from the sex offender treatment program. Probation officer Jeanette Murray testified that Donaldson was discharged from the sex offender treatment program because he did not abide by all of the rules of the provider. She did not know what rules were violated.

Polygraph examiner Gordon Bake testified about two examinations of Donaldson ordered by Donaldson's therapist as part of the treatment program. Bake testified that the first polygraph examination indicated that Donaldson was deceptive when asked whether he had violated the rules of his treatment and was keeping the violations secret from his therapist. Donaldson was

2

found deceptive on two questions in the second polygraph examination: (1) whether he told his therapist about "all deviant sexual outlets" he had used since starting treatment, and (2) whether he had "any new victims of any deviant sex act since being in treatment." Bake stated that he confronted Donaldson with the results of the second polygraph examination, and that Donaldson admitted that he had not been truthful with his therapist regarding the number of times that he had masturbated while thinking deviant thoughts. These included thoughts of his eight-year-old victim. Donaldson denied having any new victims.

Donaldson's therapist, Dr. Mathew Ferrara, also testified about why he discharged Donaldson from treatment. Dr. Ferrara gave several reasons:

> Well, I think the—first and foremost, I didn't see he was making any progress in the treatment. I didn't get the feeling that his behaviors were changing outside of treatment.
>
> In the treatment groups, I guess the second reason would be he didn't appear to be participating, fully participating. I had to prompt him quite a bit to talk. I think the failed polygraphs were an indication of deception, and I considered those as well. I think his direct admissions to me about why he failed the polygraphs were admissions that he was still engaging in deviant sexual behavior while in group.
>
> And it was my assessment, based on everything I knew about him, that that suggested he was a—that he was a continuing risk and he wasn't benefitting from treatment and supervision.

On cross examination, Dr. Ferrara confirmed that Donaldson had made some progress in treatment, never missed a required session, and paid for all of the treatment.

Donaldson introduced a discharge summary signed by Dr. Ferrara. The discharge summary indicates that Donaldson's was an "unsuccessful early discharge." It notes that Donaldson

3

attended all sessions, completed assignments as required, but that he "appeared to have difficulty changing behavior outside of therapy." Under the section "Summary of Issues Resolved/Unresolved at Time of Discharge" Dr. Ferrara wrote:

> He failed two maintenance polygraphs regarding rule violation. He has not clarified rules he has broken.

The discharge summary recommends "increased sanctions." Dr. Ferrara explained that his other reasons for discharging Donaldson may have been written in his notes, but he did not bring them with him to court.

Following the hearing, the district court found the State's allegations true, but reserved judgment on whether to adjudicate guilt and revoke Donaldson's community supervision. A second hearing was held in which the details of the underlying offenses were developed and victim impact testimony was heard. At the conclusion of that hearing, the district court adjudicated Donaldson guilty, revoked his community supervision, and sentenced him to serve consecutive sentences of ten and sixty-four years in prison.[2]

---

[2] Although Donaldson's sentence is within the statutory range and consistent with the severity of the offense, we do not condone the arbitrary manner in which the district court appears to have made that determination. The district court explained the sentence:

> Cause No. 8931 was the deferred adjudication case, a first degree felony. It has a range of punishment of not less than five nor more than 99 years or life. The victim at the age of the offense was eight years old. Eight years squared is 64 years, and that is the sentence of the defendant, Mr. Donaldson, in Cause No. 8931.

The age of a defendant is clearly relevant to sentencing, but squaring the age is not. The district court's rote calculation would assess a lesser punishment for the assault of a younger child. In

4

**DISCUSSION**

**Deferred Adjudication**

We will first address those issues raised in Donaldson's appeal of his adjudication of guilt of the offense of aggravated sexual assault of a child. Pursuant to a plea agreement, Donaldson was placed on community supervision and adjudication of guilt was deferred. *See* Tex. Code Crim. Proc. art. 42.12, § 5(a) (West 2004-05). The statute clearly states that no appeal may be taken from a court's determination to proceed with an adjudication of guilt. *See id*. § 5(b). The court of criminal appeals has held that the statute means what it says, and that the determination to proceed with an adjudication of guilt is one of "absolute nonreviewable discretion." *Olowosuko v. State*, 826 S.W.2d 940, 942 (Tex. Crim. App. 1992) (citing *Williams v. State*, 592 S.W.2d 931, 932-33 (Tex. Crim. App. 1979)); *Atchison v. State*, 124 S.W.3d 755, 757-58 (Tex. App.—Austin 2003, pet. ref'd). Accordingly, we overrule the issues raised in Donaldson's appeal in our cause number 03-04-175-CR.

**Revocation of Community Supervision**

Donaldson challenges the district court's revocation of his community supervision contending that (1) the evidence was legally and factually insufficient to support the trial court's finding that the allegations in the State's motion to revoke were true, (2) the trial court erred by admitting evidence of a polygraph test, and (3) the trial court abused its discretion by overruling his motion to quash the State's motion to revoke his community supervision.

determining the appropriate sentence, the trier of fact must consider all relevant evidence and tailor the sentence to the particular offense and defendant. *See Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999).

5

*Legal and Factual Sufficiency*

In his first and second issues, Donaldson contends that the evidence was legally and factually insufficient to support the district court's judgment. In a proceeding to revoke community supervision, the State has the burden of proving by a preponderance of evidence that the defendant violated the terms of his community supervision. *Cobb v. State*, 851 S.W.2d 871, 874 (Tex. Crim. App. 1993). We review a trial court's order revoking community supervision for an abuse of discretion. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). The trial court abuses its discretion when the State fails to show by a preponderance of the evidence that the defendant violated a condition of his community supervision as alleged. *Id.* The violation of a single condition of community supervision is sufficient to support the revocation. *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980).

In a legal sufficiency review, all the evidence is reviewed in the light most favorable to the verdict; it is assumed that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Griffin v. State*, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981) (citing *Jackson*, 443 U.S. at 318-19). In a factual sufficiency review, all the evidence is considered equally, including the testimony of defense witnesses and the existence of alternative hypotheses. *Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). Although due deference still must be accorded the fact finder's determinations, particularly those concerning the weight and credibility of the evidence, the reviewing court may disagree with the result in order to prevent a manifest injustice. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000). The evidence will be deemed factually insufficient

6

to sustain the judgment if the State's proof is too weak or the contrary evidence is too strong to support the finding of a violation of community supervision by a preponderance of the evidence. *See Zuniga*, 144 S.W.3d at 484-85; *Johnson*, 23 S.W.3d at 11. In conducting a legal or factual review, we consider all the evidence, rightly or wrongly admitted. *See Camarillo v. State*, 82 S.W.3d 529, 537 (Tex. App.—Austin 2002, no pet.).

Donaldson contends that the State's evidence was legally and factually insufficient because the "only indication of anything [Donaldson] did wrong was that he failed [two] polygraph examinations." However, we may consider the polygraph results for the purposes of sufficiency review. *See id*. Furthermore, Dr. Ferrara testified that Donaldson was also discharged because he did not adequately participate in group therapy and he directly admitted that he was still engaging in deviant sexual behavior. Polygraph examiner Bake testified that Donaldson admitted that he had not been truthful with Dr. Ferrara in reporting the number of times he had masturbated while thinking deviant thoughts—including thoughts about his eight-year-old victim. Based on this record, a reasonable trier of fact could find by a preponderance of the evidence that Donaldson violated the conditions of his community supervision. Nor do we find the State's evidence so weak, or the contrary evidence too strong to support the finding of a violation of community supervision by a preponderance of the evidence. We overrule Donaldson's first and second issues.

*Polygraph Evidence*

Donaldson next contends that the trial court erred by admitting evidence of polygraph examinations ordered by Dr. Ferrara. The court of criminal appeals has long held that the results of a polygraph test are inadmissible for all purposes. *See Ross v. State*, 133 S.W.3d 618, 625 (Tex.

Crim. App. 2004); *Shiflet v. State*, 732 S.W.2d 622, 630 (Tex. Crim. App. 1985). "The 'result' of a polygraph examination is the conclusion based on the machine's graphic indications as to whether the defendant was lying or telling the truth." *Id*. at 766. "[T]he mere mention of a polygraph examination does not automatically constitute reversible error." *Marcum v. State*, 983 S.W.2d 762, 765 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd). Courts have recognized an exception to the rule where a party has opened the door for the introduction of the results of a polygraph test. *Hoppes v. State*, 725 S.W.2d 532, 536 (Tex. App.—Houston [1st Dist.] 1987, no pet.); *see also Lucas v. State*, 479 S.W.2d 314, 315 (Tex. Crim. App. 1972); *Long v. State*, 10 S.W.3d 389, 399 (Tex. App.—Texarkana 2000, pet. ref'd).

Donaldson objected to the mention of the polygraph examination at the outset of polygraph examiner Bake's testimony and was granted a running objection. On direct examination, the State elicited testimony regarding the examination procedures but did not elicit any testimony about questions asked while Donaldson was being monitored by the polygraph machine. Rather, the State's inquiry was limited to Donaldson's post-test admission that he had not been truthful with Dr. Ferrara. This was not a "result" of a polygraph examination. *See Marcum*, 983 S.W.2d at 766. The Texarkana court of appeals recently explained:

> Statements made during a polygraph pretest interview, during the polygraph examination itself, or during an interview after the examination may be admissible evidence, but the proper procedure for introducing such evidence before the jury is to redact from such evidence all references to the polygraph examination.

*Wright v. State*, 154 S.W.3d 235, 239 (Tex. App.—Texarkana 2005, pet. ref'd) (citing procedure employed in *Hoppes*, 725 S.W.2d at 536). Although no redaction was done in this case, it would

8

make little sense in a bench trial to require the State to redact information that the judge was already aware of at the time he made the ruling admitting the evidence.

It was not until Donaldson's cross-examination of Bake that the results of the polygraph examination were introduced. Bake then testified for the first time that Donaldson was found to be deceptive on two questions and that one of the questions was whether he had "any violations of his behavior contract that [he was] keeping secret from Dr. Ferrara." The State later clarified that the other question was whether Donaldson had any new victims. Donaldson cannot now complain about the admission of evidence of the results of his polygraph examination when he opened the door through his own cross-examination of Bake. *See Lucas v. State*, 479 S.W.2d at 315; *Long*, 10 S.W.3d at 399; *Hoppes*, 725 S.W.2d at 536. Because the State's initial references to the polygraph examination were not error, and Donaldson opened the door to any further evidence of the results of the polygraph test, we overrule his third issue.

*Motion to Quash*

In his fourth issue, Donaldson contends that the district court abused its discretion by overruling his motion to quash the State's motion to revoke his community supervision. Donaldson argues that the State's motion was so vague and indefinite that it did not apprise him with what he was charged, thus rendering him unable to prepare a defense. The allegations in a motion to revoke community supervision need not be stated with the same particularity as in an indictment. *Labelle v. State*, 720 S.W.2d 101, 104 (Tex. Crim. App. 1986). Due process only requires a motion to revoke community supervision give the defendant fair notice of the violation asserted as would enable him to prepare a defense. *See id*. at 108. To determine whether a motion to revoke provided

9

the necessary notice, we first decide whether some requisite item of notice is absent. *See id.* at 10708. If we find that the motion did not provide adequate notice, we must then determine whether, in the context of the case, the lack of notice had an impact on the defendant's ability to prepare a defense and the extent of such impact. *Id.* at 108 (adopting harm analysis set forth in *Adams v. State*, 707 S.W.2d 900, 903 (Tex. Crim. App. 1986)).[3]

The State's motion alleged that Donaldson violated the terms and conditions of his probation because he (1) "was unsuccessfully discharged from [the] Sex Offender group by Dr. Matthew Ferrara on March 31, 2003," and (2) "failed to abide by the rules of the sex offender provider." Donaldson responded in his motion to quash that the allegations did not specify what rules he failed to comply with and what he "failed to do that resulted in the unsuccessful completion of sex offender treatment." At the beginning of the trial, the district court overruled the motion to quash, but encouraged the State to clarify its allegations. The State responded and specifically stated that its allegations were not based on the results of the polygraph:

The Court:   And is this because of the bad polygraph?

[The State]:  No, your Honor. He failed to successfully participate in group, so he was terminated. Now, I don't believe that was based on the polygraph

---

[3] A question has been raised whether the *Adams* standard survives the enactment of the harmless error provision of the rules of appellate procedure. *See* 43A George E. Dix and Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 43.570 at 768 (2d ed. 2001). However, the court of criminal appeals adopted the *Adams* harm standard in *Labelle v. State*, an opinion dated after the enactment of the former rules of appellate procedure. *See* 720 S.W.2d 101, 104 (Tex. Crim. App. 1986). The former rules contained a harmless error standard that would otherwise have applied to the error found in that case. *See* Tex. R. App. P. 81(b)(2) (Tex. Crim. App. 1986). As such, we presume that the court of criminal appeals intended a separate harm analysis for errors relating to the lack of fair notice in a motion to revoke probation.

results. Now it may be based on some information that was received from the interview along with the polygraph, but it was not based upon—the polygraph was not the reason for his termination from the provider.

Donaldson again raised the issue of notice following the State's direct examination of Bake and asked for a continuance:

We have very, very broad allegation[s] against Mr. Donaldson about what he was supposed to have done wrong. He didn't complete the sexual offender program.

I have volumes of things that Mr. Donaldson has given me that he does have copies of. And I couldn't really figure out why were in trial today, other than that he may have failed a polygraph, which I thought of [as] inadmissible. So I'm sitting here now, all right, how do I defend these statements that he's supposed to have made that allegedly are different minutely from earlier statements that he made.

The trial court refused to continue the trial, but recessed the case for lunch to allow defense counsel to interview Bake and review his reports.

In *Labelle*, the court of criminal appeals held that a motion to revoke probation did not provide sufficient notice. *See* 720 S.W.2d at 106. The motion alleged that Labelle violated his probation by committing an offense against the law of the State. *Id.* at 103. Specifically, it alleged that he intentionally removed and destroyed a governmental record from the El Paso County Court Residential Treatment Center on February 18, 1981. *Id.* The court of criminal appeals faulted the motion for not identifying the record removed, explaining that "specifying which document is involved is necessary to the defendant's ability to adequately prepare for the case." *Id.* at 106. The court based this conclusion on a review of several prior cases holding motions to revoke probation insufficient. *See Matte v. State*, 572 S.W.2d 547, 549 (Tex. Crim. App. 1978) (motion alleging false

11

statement made to firearms dealer but did not specify which statement was false); *Garner v. State*, 545 S.W.2d 178, 179 (Tex. Crim. App. 1977) (motion alleged theft on a specific date but did not describe the offense); *Campbell v. State*, 456 S.W.2d 918, 921-22 (Tex. Crim. App. 1970) (motion alleged "injurious or vicious habits" but did not identify the specific habit).

The motion at issue in this case contained two related allegations—Donaldson was discharged from therapy and Donaldson failed to abide by the rules of his provider. The motion did not identify what rules Donaldson had violated or the reason for his discharge. Donaldson's counsel was left to sort through the incomplete records in his client's possession and guess what the State's case might be.[4] We hold that the State's motion did not provide the fair notice necessary for the preparation of a defense. *See Labelle*, 720 S.W.2d at 106.

We next determine whether the lack of fair notice, in the context of the case, had an impact on Donaldson's ability to present a defense. *See id*. at 108. Donaldson's brief does not cite *Labelle* or *Adams* and does not point to any action, even in hindsight, that could have been taken had his counsel had fair notice of the State's case. At trial, Donaldson's counsel made it clear that he did not have fair notice and that he was under the mistaken impression that the State's case was solely about failed polygraphs. However, the State clarified its allegations at the beginning of trial, and Donaldson was permitted time to review documents and interview the State's witness regarding the admissions made by his client. From this record, we cannot conclude that the lack of fair notice

---

[4] It also appears from the record that the discovery was limited in this case. Donaldson's counsel was not permitted to view his client's probation file, did not have access to Dr. Ferrara's file, and was not given the reports documenting the admissions forming the heart of the State's case until the day of trial.

12

had an impact on Donaldson's ability to prepare a defense sufficient to prejudice his substantial rights. *See Labelle*, 720 S.W.2d at 108; *Adams*, 707 S.W.2d at 904. Accordingly, we overrule Donaldson's fourth issue.

## CONCLUSION

Having overruled all of Donaldson's issues, we affirm the district court's judgments.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton:  Opinion by Justice B. A. Smith;
     Concurring Opinion by Justice Pemberton

Affirmed

Filed:   August 24, 2005

Do Not Publish