In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00167-CR
______________________________


ISSAM NASIB HADDAD, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 282nd Judicial District Court
Dallas County, Texas
Trial Court No. F04-32941-PS


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross


MEMORANDUM OPINION

          Issam Nasib Haddad was convicted in a trial before the court of unlawfully passing
a forged $100.00 bill. The trial court assessed punishment at five years' imprisonment and
a $5,000.00 fine. Imposition of the imprisonment was suspended, and Haddad was placed
on community supervision for five years. Haddad appeals, contending: 1) the trial court
erred in admitting into evidence two counterfeit $100.00 bills; 2) the proof at trial did not
establish the same complainant as alleged in the indictment; 3) the evidence is legally and
factually insufficient to sustain Haddad's conviction; and 4) the trial court failed to follow the
dictates of Article 42.07, Texas Code of Criminal Procedure, during Haddad's sentencing. 
We overrule these contentions and affirm the judgment. 
Background
           The evidence showed that Haddad is a Lebanese national who was sixty-nine years
old at the time of trial. He had been working in the United States for fifteen years. On the
date in question, Haddad drove to the airport to confirm his ticket back to Lebanon. 
Because he arrived too early, he decided to pass time by going to the horse races at Lone
Star Park in Grand Prairie.


 Jody Luttrell was employed as a teller at the park pavilion
where she took bets on horses. Luttrell testified that, on the occasion in question, an
individual placed three or four bets with her and gave her a $100.00 bill that "felt like wax
paper." Luttrell asked the individual if the bill was real, and he responded, "Is it not real?"
and then paid for his bets with a cash voucher. Luttrell asked this individual to "[w]ait just
a minute" and handed the $100.00 bill to her supervisor, who was standing nearby. Luttrell
testified her supervisor used a counterfeit marking pen used to test suspect bills; the
marking pen ink turns black on counterfeit money. Luttrell said the supervisor's mark on
this bill turned black. Haddad testified that the supervisor had a "machine" and that she
put the bill "on the machine" and then said, "[I]t's fake money; it's not good money." 
According to Luttrell, the individual said to the supervisor, "I'll be right back," and then
exited the pavilion. Security personnel at the park were contacted, and Luttrell testified that
she or her supervisor gave the suspect bill to Daniel Stankovich, director of security. 
          Stankovich testified he went to the pavilion where a security supervisor had Haddad
detained. Haddad went with Stankovich to a security office. He said Haddad appeared
"antsy" and asked permission to use the restroom, but Stankovich refused because he was
afraid Haddad might "dispose of evidence." Haddad testified that he had a prostate
problem and that is why he wanted to use the restroom. At the time of Stankovich's initial
contact with Haddad, Stankovich was aware of only the one $100.00 bill that had been
passed to Luttrell. When Stankovich asked Haddad where he obtained that $100.00 bill,
Haddad told him he recently acquired it on the black market in Beirut, Lebanon. 
Stankovich asked Haddad if he had any other monies, and Haddad gave him genuine
money he had in his pockets and told Stankovich "what was in his pocket was what he
had." 
          Stankovich later learned that Haddad had passed two "one-hundred dollar bogus
bills" to another teller at the park before he passed the one to Luttrell. He said all
counterfeit bills passed at the park are normally sent to him, and specifically testified to
receiving the bill that was passed to Luttrell. He testified that all three $100.00 bills passed
at the park were determined to be counterfeit. Stankovich called the Grand Prairie police. 
          Walter Swayze, a United States postal inspector, accompanied police detective
Randy Holten in transporting Haddad from Lone Star Park to the police department. 
During the process of booking Haddad into the city jail, and at a time when no one else
was watching, Swayze observed Haddad remove something from his shoe and "acted like
he was going to put it in his pocket." Swayze testified that, when he approached Haddad,
Haddad had three counterfeit $100.00 bills in his hand. Before this incident, Haddad had
been asked several times if he had any more counterfeit money and he had responded
that he did not.
          Holten testified that five $100.00 bills were collected at Lone Star Park and three
$100.00 bills were collected from Haddad at the jail. The State offered two of these bills
into evidence, one of which contained the serial number of the one $100.00 bill alleged in
the indictment as having been passed by Haddad to Stankovich. Holten testified that
Haddad passed both these bills at the park. He admitted on cross-examination that, as for
the other six $100.00 bills, he could not distinguish the three that came from Haddad's
shoe from the other three that were passed at the park. He knew, however, that the two
bills offered into evidence, including the one alleged in the indictment, were passed at the
park because he logged those two bills separately from the other six, and he identified the
log sheet where he had so listed those two bills by serial numbers. The other six bills were
listed by serial numbers on a separate log sheet and had been taken by the Secret
Service.
          Trent Steele, a Secret Service agent, testified that the two $100.00 bills introduced
into evidence, including the one alleged in the indictment, were counterfeit. He further
testified, without objection, that Haddad was given a polygraph examination. He said that,
when Haddad was asked on the polygraph examination if he knew this money was
counterfeit when he passed it, his answer that he did not know was "non-deceptive."           Haddad testified in his own behalf. He said that, in September 2004, he was living
in Beirut, Lebanon, and had loaned his son $1,000.00 in United States currency to start a
business. On the night before Haddad was to travel to the United States, his son awoke
him and told him that he (the son) had $800.00 for Haddad. Haddad instructed his son to
put the money in the jacket he intended to wear the next day when he traveled to the
United States. The next day, Haddad wore the jacket on his trip to the United States. On
arrival in the United States, he checked into a hotel. The next day, Haddad drove a rental
car to the airport to confirm his ticket back to Lebanon. Because he arrived at the ticket
counter before the airlines had opened for business, he decided to go to Lone Star Park
for two or three hours. 
          When Haddad arrived at the park, he took five of the eight $100.00 bills his son had
placed in his jacket and put them in his shoes so he would not spend them at the park. He
made his first bet at the park with two of the other three $100.00 bills that remained in his
jacket. Haddad then made a second bet with one $100.00 bill, but the lady to whom he
had passed it gave it to her supervisor and asked the supervisor to check it. Haddad
testified that the supervisor put the bill on a machine and then said, "No, it's fake money;
it's not good money," and told him "Don't leave from here." Haddad then went to the
person to whom he had given the $100.00 bill and asked if he could make his bet with a
"winner ticket" he had from his first bet. The lady agreed and allowed him to make his bet. 
When asked if this lady was "the lady that testified earlier today," Haddad answered, "Yes." 
          Haddad denied trying to leave the race track after his money was questioned. He
also testified that he lied to the investigators about where he got the counterfeit money and
about not having any more on his person in order to protect his son. He also denied
knowing the bills were counterfeit when he made his bets.
Error in Admission of Counterfeit Bills
          Haddad first contends the trial court erred in the admission of the two counterfeit
$100.00 bills into evidence. He contends the State failed to properly authenticate these
bills. He bases his contention partly on the State's failure to prove that either of the two
bills was the one passed to Luttrell. He also points out that Luttrell testified her supervisor
put a black mark on the bill she received and that neither of the bills introduced into
evidence had a black mark on it. Alternatively, Haddad argues that the State failed to
prove a chain of custody of the bills. 
          The admissibility of evidence is within the discretion of the trial court and will not be
overturned absent an abuse of discretion. Moses v. State, 105 S.W.3d 622, 627 (Tex.
Crim. App. 2003). As long as the trial court's ruling was within the zone of reasonable
disagreement, the appellate court should affirm. Id. Concerning authentication, Texas
Rule of Evidence 901(a) provides:
The requirement of authentication or identification as a condition precedent
to admissibility is satisfied by evidence sufficient to support a finding that the
matter in question is what its proponent claims.

Tex. R. Evid. 901(a).

          Here, the State claimed the counterfeit bill introduced into evidence bearing the
same serial number as the one alleged in the indictment was passed by Haddad at the
park. Accordingly, this piece of evidence had a unique and distinctive characteristic: a
serial number. Ordinarily, when an object is easily identifiable as being a particular item,
the chain of custody need not be shown if there is direct evidence at the trial that the same
item was taken from the scene of the crime. Warner v. State, 646 S.W.2d 478, 479 (Tex.
App.—Houston [1st Dist.] 1982, no pet.). Further, unless a defendant raises an issue of
tampering, any objection that the State did not establish chain of custody goes to the
weight, not the admissibility, of the evidence. Bird v. State, 692 S.W.2d 65, 70 (Tex. Crim.
App. 1985).
.        Holten testified Haddad passed both bills at the park. Holten testified he knew this
because he logged those two bills separately from the other six, and he identified the log
sheet where he had so listed those two bills by serial numbers, including the one alleged
in the indictment. Haddad is correct that Holten could not specifically identify the person
or persons from whom he had received these bills at the park. Haddad is also correct that
Luttrell never directly identified him as the person from whom she received the bill she
took. Nonetheless, when Stankovich asked Haddad where he obtained that bill, Haddad
answered that he recently acquired it in Beirut. Haddad's response to Stankovich was an
indirect admission that the bill was his and that he passed it to Luttrell. Luttrell testified she
or her supervisor gave the bill to Stankovich. Stankovich testified specifically to receiving
the bill passed to Luttrell. We believe the evidence sufficiently established that the two bills
admitted into evidence were what the State claimed them to be: counterfeit bills passed
by Haddad at the Lone Star Park on the occasion in question.
          Haddad, nonetheless, points out that Luttrell said her supervisor put a black mark
on the bill Luttrell received and that neither of the bills introduced into evidence had a black
mark on it. He fails to point out, however, where in the record he objected to this evidence
on this basis. See Tex. R. App. P. 33.1 (preservation of error; how shown), 38.1(h)
(appellant's brief must cite to record where error preserved). Further, when testifying
concerning how the supervisor tested this bill, Haddad said that she had a "machine" and
that she put the bill "on the machine." He made no mention of the bill being marked.
          The trial court's ruling admitting these bills into evidence was within the zone of
reasonable disagreement, and no abuse of discretion has been shown. Haddad's first
point of error is overruled.           
Proof of Same Complainant as Alleged in the Indictment
          Haddad next contends there is a fatal variance between the complainant's name
alleged in the indictment and the name of the complainant proven at trial. The indictment
alleges that Haddad passed the counterfeit bill to Stankovich, but the proof at trial showed
it was first passed to Luttrell. Although not specified in his brief, we assume Haddad
contends that, because of this alleged variance, the evidence is legally insufficient.
          In reviewing the legal sufficiency of the evidence, we examine the relevant evidence
in the light most favorable to the verdict and determine whether any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt. When
legal sufficiency of the evidence is challenged based on a variance between the charge
and the proof, we review the variance for materiality, because only a "material" variance
will render the evidence insufficient. See Smith v. State, 135 S.W.3d 259, 262 (Tex.
App.—Texarkana 2004, no pet.); Gollihar v. State, 46 S.W.3d 243, 257 (Tex. Crim. App.
2001). The variance in this case was not material; therefore, the evidence was not legally
insufficient because of that variance.As noted above, Haddad indirectly admitted to Stankovich, and directly admitted in
his own testimony at trial, that he passed the bogus $100.00 bill to Luttrell. Luttrell, or her
supervisor, gave the bill to Stankovich. Stankovich testified in his capacity as director of
security at Lone Star Park and said that all counterfeit bills passed at the park are normally
sent to him. He specifically testified to receiving the bill that was passed to Luttrell.
          Both Haddad and the State cite Dukes v. State, 742 S.W.2d 472 (Tex. App.—Dallas
1987, pet. ref'd), in their respective briefs before this Court. In Dukes, the court held that:
[W]hen an individual presents an instrument for cashing at some business
location, he not only passes it to the person to whom he first gives it for that
purpose, but he also intends to pass the instrument to the person on the
premises who has authority to carry out the transaction. If the person to
whom he first passes the instrument is without authority to cash it, the
presenter impliedly authorizes that individual to give the instrument to
another individual who can effect encashment. 

Id. at 474.

          Haddad argues against application of this holding in the instant case because there
was no showing that Stankovich had authority to cash the instrument. We find this
argument unpersuasive. 
          In Parker v. State, 985 S.W.2d 460 (Tex. Crim. App. 1999), Parker was charged and
convicted for passing a forged writing to Scott Baker. The evidence showed that Parker
had attempted to purchase tires and wheels with the forged instrument by first passing it
to the salesman, Bret Followill. Followill took the check to Baker, the store manager. 
Baker testified he was the only employee authorized to accept checks. In rejecting
Parker's contention there was a fatal variance between the indictment and the evidence,
the Texas Court of Criminal Appeals quoted Watson v. State, 718 S.W.2d 892 (Tex.
App.—Beaumont 1986, pet. ref'd), for the proposition that "it is the intent of the person
passing the forged instrument which is at issue in a forgery case, not whether the passee
will accept and give value for the instrument." Parker, 985 S.W.2d at 463. The Texas
Court of Criminal Appeals reiterated that the focus in a case of passing a forged instrument
is on the intent of the accused, not the actions of the recipient. Id. at 464. The court went
on to conclude that "an instrument is passed within the meaning of the forgery statute if it
is delivered or circulated." Id. 
          Based on Parker, we find it immaterial that there was no showing that Stankovich
had authority to cash the instrument. Haddad's second point of error is overruled.
Legal Sufficiency of the Evidence
          Haddad next contends the evidence is legally insufficient to sustain his conviction
because there was no evidence the $100.00 bill in issue purported to be the act of another
who did not authorize the act. 
          In reviewing the legal sufficiency of the evidence, we view the relevant evidence in
the light most favorable to the verdict and determine whether any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt. Johnson v.
State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).
          Haddad's contention under this point is based on his earlier contention that the two
$100.00 bills introduced into evidence were not properly authenticated. In overruling his
earlier point of error, we concluded that the bill reflecting the same serial number as the
bill alleged in the indictment was properly authenticated. Therefore, the testimony of
Steele was legally sufficient to show that bill purported to be the act of another who did not
authorize the act. Concerning that specific $100.00 bill, Steele testified as follows:
Q.- - [I]s that a writing . . . purporting to [be] the act of the United States
Treasury Department, who did not authorize the act?
 
A.That's correct.
 
Q.And   is   that   writing   what   appears   to   be   an   issue   of
 money,  to-wit: . . . one one-hundred dollar Federal Reserve note of the
United States of America?

          A.       It is.

          . . . .
 
Q.. . . And the writing purports to be but is not a part of an issue of
money issued by the United States Treasury Department?

          A.       That's correct.

          We find this evidence legally sufficient and overrule Haddad's contention.
Factual Sufficiency of the Evidence
          Haddad next contends the evidence is factually insufficient to establish that he
possessed the intent to defraud or harm. While acknowledging such intent may be
established by circumstantial evidence, Haddad emphasizes that there is no direct
evidence he knew the bills were counterfeit when he made his bets and that he passed a
polygraph examination to this effect. 
          In a factual sufficiency review, the appellate court views all the evidence in a neutral
light and determines whether the evidence supporting the verdict is too weak to support
the finding of guilt beyond a reasonable doubt or if evidence contrary to the verdict is
strong enough that the beyond-a-reasonable-doubt standard could not have been met.
Threadgill v. State, 146 S.W.3d 654, 664 (Tex. Crim. App. 2004) (citing Zuniga v. State,
144 S.W.3d 477, 486 (Tex. Crim. App. 2004). If the evidence is factually insufficient, then
we must reverse the judgment and remand for a new trial. Clewis v. State, 922 S.W.2d
126, 135 (Tex. Crim. App. 1996).
          According to Luttrell, Haddad exited the pavilion when her supervisor determined
the $100.00 bill Haddad had passed was bogus. When permitted to explain her
impression of Haddad’s conduct, Luttrell testified:
                     A.       . . . [H]e knew [it] wasn't real when he left the building.
                     . . . .
                     Q.       What is it about his behavior and what you observed of
                     his demeanor that made you believe that? 
 
                     A.       He didn't wait to get his money back; you know, he didn't 
                     wait on the hundred-dollar bill. That's a lot of money.

          Haddad first told Stankovich he obtained the bill he passed to Luttrell at a black
market in Beirut. He denied to Stankovich and again to the police that he had any other
counterfeit bills on his person. After being caught at the police station taking three—or five,
according to Haddad's testimony—other bogus $100.00 bills from his shoe, his explanation
then was that his son had put all those bills in Haddad’s jacket back in Lebanon the day
before Haddad traveled to the United States.
          The fact that Haddad passed a polygraph examination lessens the sufficiency of the
evidence only minimally. The United States Supreme Court has written, "there is simply
no consensus that polygraph evidence is reliable." United States v. Scheffer, 523 U.S.
303, 309 (1998). In Texas, a trial court may not admit, over objection, polygraph
examination evidence or consider it for any purpose. Wright v. State, 154 S.W.3d 235, 238
(Tex. App.—Texarkana 2005, pet. ref'd); Buckley v. State, 46 S.W.3d 333, 336 (Tex.
App.—Texarkana 2001, pet. dism'd, untimely filed). 
          Viewing all the evidence in a neutral light, we cannot say the evidence supporting
the verdict is too weak to support the finding of guilt beyond a reasonable doubt, or that the
evidence contrary to the verdict is strong enough that the beyond-a-reasonable-doubt
standard could not have been met. Haddad's point of error is overruled.
Failure to Follow Article 42.07 at Sentencing
          Haddad's fifth and final point of error complains that the trial court failed to follow the
dictates of Tex. Code Crim. Proc. Ann. art. 42.07 (Vernon Supp. 2005) at sentencing by
failing to inquire whether Haddad had any reason why sentence should not be pronounced
against him. Haddad contends that, because he was denied the opportunity to articulate
any reason that would bar sentencing, he should have a new punishment hearing.
          The  record  shows  Haddad  did  not  object  at  trial  to  this  failure.  See  Tex.  R.
App. P. 33.1. Accordingly, he waived any error. Tenon v. State, 563 S.W.2d 622, 623
(Tex. Crim. App. 1978). Further, the written judgment contains the following recitation: 
Thereupon the said defendant was asked by the court whether he had
anything to say why said sentence should not be pronounced against him,
and he answered nothing in bar thereof.

This point of error is overruled.

Conclusion

          We affirm the judgment.




                                                                           Donald R. Ross
                                                                          Justice

Date Submitted:      April 24, 2006
Date Decided:         May 24, 2006

Do Not Publish