**Affirmed and Opinion Filed July 6, 2018**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-17-00810-CR

**DANIEL ORTEGA, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 199th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 199-82017-2016**

## MEMORANDUM OPINION

Before Justices Bridges, Brown, and Boatright
Opinion by Justice Bridges

Daniel Ortega appeals his convictions of one count of continuous sexual assault of a child younger than fourteen and one count of indecency with a child by sexual contact. A jury convicted appellant, and the trial court assessed punishment at forty-one years' confinement on the continuous sexual assault conviction and twenty years' confinement on the indecency conviction. In three issues, appellant argues the trial court erred in (1) admitting evidence of a purported voluntary admission of guilt made by appellant during a polygraph examination, (2) denying his right to confront the polygraph examiner and cross-examine him in a meaningful way, and (3) prohibiting him from either eliciting testimony or introducing extrinsic evidence regarding the polygraph examiner's bias against appellant and in favor of law enforcement. We affirm the trial court's judgment.

Because appellant does not challenge the sufficiency of the evidence to support his convictions, only a brief recitation of the facts is necessary. At trial, appellant's stepsister A.C. testified appellant began abusing her when she was nine. At the beginning, the abuse occurred "once every week, two weeks," but then "it started getting two to three times every week." The abuse continued until A.C. was "about to turn thirteen." A.C. told her mother what had happened when A.C. "had gotten to the point where [she] wasn't sleeping and [she] was having panic attacks every day at school."

In a hearing outside the presence of the jury before trial, the trial court addressed the issue of the admissibility of appellant's statements to a polygraph examiner, Michael D. Park. The trial judge confirmed that appellant took the polygraph test voluntarily in an effort to show he had not committed the crime before he was arrested, the State had no involvement in selecting the polygraph examiner, the polygraph examiner was not associated with any law enforcement agency or State agencies when he performed the polygraph, and polygraph results were not admissible for any purpose. Appellant's counsel made a Rule 403 objection and argued that admission of appellant's statements to Park would confuse the issues before the jury because the jury would not have the context of the statements being made to a polygraph examiner. Appellant's counsel also objected that he would not be able to effectively cross-examine Park because he would not be able to mention the polygraph. The trial court ruled that the statements appellant made "while he was not hooked up to a polygraph machine" were admissible, but the trial court ordered any polygraph results to be redacted and ordered the parties to tell their witnesses not to say the word "polygraph" or "lie detector" or allude to the fact that there was a polygraph.

With the jury present, Park testified he "started off as a police officer" and was recruited by the U.S. Marshals. Park was in military counterintelligence and was a fugitive investigation supervisor for the U.S. Marshals and an inspector in the federal witness protection program. Park

testified he retired in 2002 and "just became an entrepreneur." Park testified appellant came to Park's office, and appellant told Park that he had lived in a house with his stepsister, A.C., and "from the time she was about ten years old, she allege[d] that he had sex with her and that he touched her." Appellant denied that any abuse occurred and said A.C. "got caught sneaking out of the house and she was on drugs and she blames all her acting out behavior on [appellant] for molesting her." Park continued the conversation with appellant, and appellant "said he accidentally touched her and his fingers went into her vagina while they were roughhousing." Park asked appellant to draw his hand on a piece of paper and to "[d]raw a line, however much or however little, that [appellant] placed [his] finger in A.C.'s vagina." Appellant drew his hand and a line across a finger and said, "The only thing I can say is not sexual, just horseplay. She was always all over me." The drawing and Park's handwritten note regarding what the drawing depicted were entered into evidence. Park testified he wrote a report following his meeting with appellant and referred the matter to the police. Appellant was later indicted on one count of continuous sexual assault of a child and two counts of indecency with a child by sexual contact.

In another hearing outside the presence of the jury, polygraph examiner A.D. Skip Ensley testified Park is "not trusted in the [polygraph] community." Ensley testified there were "several complaints filed against" Park, Park's "method of how he conducts his exams is always under question," and Park has a reputation for being deceitful. In response to questioning from the prosecutor, Ensley testified he had never worked with Park, Ensley had "no idea" whether any of the complaints against Park had been sustained, and his opinion about Park being deceitful was based on what other people had told him. In response to questioning, Ensley testified that licensed polygraph examiners were required to report anyone who admitted that they committed a sexual assault. At the conclusion of the hearing, the trial judge ruled that Ensley could testify regarding

Park's reputation for truthfulness and honesty and regarding whether it is standard practice in his occupation to make audio and video recordings.

With the jury present, Ensley testified he was part of the same community as Park, and Park's reputation for truthfulness in the community was "very questionable." Ensley also confirmed that, in the community, members were "supposed to audio or video record the evaluations" they performed. On cross-examination, Ensley was asked if his knowledge of this case was "pretty limited," and Ensley answered, "To some degree. Yes." The jury subsequently convicted appellant of continuous sexual abuse and indecency with a child. This appeal followed.

In his first issue, appellant argues the trial court erred by admitting evidence of a purported voluntary admission of guilt made by appellant during a polygraph examination. Specifically, appellant argues statements made during polygraph tests or during pre- or post-test interviews are admissible only "when the statement is recorded or not disputed (reliable), when the statement is not otherwise excluded by the rules of evidence and the constitution, and when any mention of the polygraph can be redacted without prejudicing the defendant or confusing the jury." Regarding the sketch of appellant's hand, appellant argues the sketch is not relevant because the traced hand with a line on one finger, standing alone, does not constitute an admission that appellant sexually assaulted A.C. Further, appellant argues the face of the sketch does not indicate that appellant received and understood Park's instructions and intended the drawing to be an assertion or admission of guilt. Finally, appellant argues it is impossible in this case to redact mention of the polygraph without confusing the jury and prejudicing him. Appellant argues that, without mentioning the polygraph, it appeared to the jury as if Park was "some type of therapist," and appellant went to Park to help "deal with [appellant's] sexual problems."

We review a trial judge's decision to admit or exclude evidence under an abuse of discretion standard. *Henley v. State*, 493 S.W.3d 77, 82-83 (Tex. Crim. App. 2016). A trial judge

abuses her discretion when her decision falls outside the zone of reasonable disagreement. *Id.* at 83. Before a reviewing court may reverse the trial court's decision, it must find the trial court's ruling was so clearly wrong as to live outside the zone within which reasonable people might disagree. *Id.* The results of a polygraph test are inadmissible for all purposes. *Nethery v. State*, 692 S.W.2d 686, 700 (Tex. Crim. App. 1985). Statements made during a polygraph pretest interview, during the polygraph examination itself, or during an interview after the examination may be admissible evidence, but the proper procedure for introducing such evidence before the jury is to redact from such evidence all references to the polygraph examination. *Wright v. State*, 154 S.W.3d 235, 239 (Tex. App.—Texarkana 2005, pet. ref'd) (citing *Hoppes v. State*, 725 S.W.2d 532, 536 (Tex. App.—Houston [1st Dist.] 1987, no pet.).

Here, appellant never disputed the voluntariness of his statements to Park. All references to a polygraph examination were redacted, and Park testified regarding appellant's verbal statements and hand drawing. Park's testimony established that appellant made the hand drawing. In context, this evidence was relevant to show appellant's commission of the charged offenses. Citing *Wright* and *Hoppes*, appellant attempts to impose a "reliability" requirement on statements made surrounding a polygraph, which appellant claims requires a showing that either statements were audio or video recorded or were undisputed by a defendant. However, *Wright* and *Hoppes* impose no such requirement. *See Wright*, 154 S.W.3d at 239; *Hoppes*, 725 S.W.2d at 536.

Regarding appellant's argument that redaction of the polygraph might have misled the jury into thinking Park was a therapist appellant sought out to help with his sexual problems, the record shows Park testified to his lengthy career in law enforcement and testified that appellant denied abusing A.C. and described his encounter with A.C. as "horseplay." Under these circumstances, we conclude the trial court did not abuse its discretion in admitting appellant's statements to Park and the hand drawing. *See Henley*, 493 S.W.3d at 82-83. We overrule appellant's first issue.

In his second issue, appellant argues the trial court erred by denying appellant the right to confront Park and cross-examine him in a meaningful way. Specifically, appellant argues the trial court's ruling that "only statements made by the Appellant while he was not hooked up to the polygraph machine are admitted" sabotaged the defense because "only the statement fabricated by Park with the 'trace your hand' routine was made while he was not hooked up to the machine." Appellant argues that, by not allowing him to put Park's testimony in context by showing appellant voluntarily came to Park to take a polygraph test, the trial court "aided the [S]tate in selling this fiction" that appellant went to Park for help and not in an effort to exonerate himself.

As we have already discussed, appellant was able to develop evidence that he went to Park for assistance in light of his stepsister's allegedly false accusations. Park testified appellant denied any abuse. Again, Park testified to his extensive background in law enforcement and gave no indication he was "some kind of therapist." We conclude the trial court did not abuse its discretion in redacting all evidence of the polygraph. *See id.* We overrule appellant's second issue.

In his third issue, appellant complains the trial court erred by prohibiting him from either eliciting testimony from witnesses or introducing extrinsic evidence regarding Park's bias against appellant and in favor of law enforcement. Specifically, appellant complains of the exclusion of Ensley's testimony that Park "is known for fraud and deceit and that Park was being sued and investigated for purposefully manipulating results either in favor of law enforcement or in exchange for compensation."

Initially, we note that Ensley was permitted to testify that Park's reputation for truthfulness in the community was "very questionable" and that, in the community, members were "supposed to audio or video record the evaluations" they performed. In a hearing outside the presence of the jury, Ensley testified he had never worked with Park, Ensley had "no idea" whether any of the complaints against Park had been sustained, and his opinion about Park being deceitful was based

on what other people had told him. Thus, as the trial court observed, Ensley's opinions about Park were based on hearsay. No evidence was presented that Park was biased against appellant. Under these circumstances, we cannot conclude the trial court erred in excluding Ensley's testimony. *See id.* We overrule appellant's third issue.

We affirm the trial court's judgment.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

170810F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DANIEL ORTEGA, Appellant

No. 05-17-00810-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 199th Judicial District Court, Collin County, Texas
Trial Court Cause No. 199-82017-2016.
Opinion delivered by Justice Bridges.
Justices Brown and Boatright participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered July 6, 2018.