

# IN THE
# TENTH COURT OF APPEALS

## No. 10-16-00247-CR

SANTOS VICTOR RUIZ, JR.,

Appellant

v.

THE STATE OF TEXAS,

Appellee

From the 361st District Court
Brazos County, Texas
Trial Court No. 15-00539-CRF-361

## MEMORANDUM OPINION

In eight issues, appellant, Santos Victor Ruiz Jr., challenges his conviction for continuous sexual abuse of a child. *See* TEX. PENAL CODE ANN. § 21.02 (West Supp. 2017). Because we overrule all of Ruiz's issues on appeal, we affirm.[1]

---

[1] As this is a memorandum opinion and the parties are familiar with the facts, we only recite those facts necessary to the disposition of the case. *See* TEX. R. APP. P. 47.1, 47.4.

# I.    RUIZ'S MOTION FOR CONTINUANCE

In his first issue, Ruiz contends that the trial court abused its discretion by denying his motion for continuance "sought due to the State belatedly providing a wealth of information concerning the charged offense and various extraneous offenses allegedly committed by Ruiz."  We disagree.

> Where denial of a continuance has resulted in representation by counsel who was not prepared, we have not hesitated to declare an abuse of discretion.  Nevertheless, the granting or denial of a motion for continuance is within the sound discretion of the trial court.  To find an abuse of discretion in refusing to grant a motion for continuance, there must be a showing that the defendant was prejudiced by his counsel's inadequate preparation time.
>
> Appellant's counsel contends that the denial of the continuance rendered him unable to prepare an adequate defense; however, he does not argue, much less establish, any specific prejudice to his cause arising from the trial court's failure to continue the trial.  In *Hernandez*[,] appointed counsel had less time than appellant to prepare for trial, but we, nevertheless, held:
>
>> Although this is a relatively short time for preparation in a [capital murder trial], no specific, serious matter has been raised by the appellant and the record does not show otherwise that the appellant's defense was prejudiced by counsel not having more time to prepare for trial.
>
> . . . .  Like *Hernandez*, appellant does not allege any specific prejudice to his defense.  He does not allege that he was unfairly surprised at trial or unable to effectively cross-examine any of the State's witnesses.  The bare assertion that counsel did not have adequate time to interview the State's potential witnesses does not alone establish prejudice.  The assertion that counsel did not have time to adequately investigate medical records for potential mitigating evidence without any showing of harm likewise fails to establish an abuse of discretion.  Absent a showing of prejudice, we can[]not hold

that the trial court abused its discretion in overruling appellant's motion for continuance.

*Heiselbetz v. State*, 906 S.W.2d 500, 511-12 (Tex. Crim. App. 1995) (internal citations omitted).

The record from the July 7, 2016 hearing on Ruiz's motion for continuance is contained in the record. At this hearing, Ruiz argued that the basis for his motion for continuance was that there was:

> a significant amount of discovery that has been provided to me by the State . . . . And [the prosecutor] and I went through some of that with Judge Gore on the 30th when we had our pretrial hearing. At that time[,] I announced ready subject to reviewing all the information that was turned over to me there.

Ruiz admitted that he was given oral notice, as early as June 24th or 25th, that there was a new extraneous offense involving the possession of child pornography on a laptop turned over to the Department of Homeland Security. He also acknowledged that he had received the report prepared by the computer expert and requested the appointment of an investigator to help him review the computer.

In addition to the foregoing, Ruiz also noted that the State interviewed witnesses from Las Cruces, New Mexico, and returned with two different interviews of Ruiz from 2007 about an incident that was dismissed in Deming, New Mexico. Ruiz received additional interviews of victims by Deming Police, an article 38.22 statement and phone calls with parents of the alleged victims, including jail-phone calls—all of which Ruiz's counsel had begun listening to at the time of the July 7, 2016 hearing.

The prosecutor responded that he had not been aware until recently that Ruiz was still talking to Y.R., the mother of one of Ruiz's other victims, and he felt the jail calls could contain *Brady* material. Moreover, the prosecutor stated that he did not intend to use any of the jail-phone calls as evidence or trial exhibits. Regarding statements Ruiz made to Bryan Police Department Detective Chris Loup, the prosecutor asserted that none of the Bryan Police reports noted the existence of any statements; that the statements were immediately turned over to Ruiz upon discovery; and that the State did not intend to use the statements in its case-in-chief. The mother of R.P., the child victim in this case, informed the prosecution about the child pornography on the laptop, and the Department of Homeland Security took custody of the laptop on June 22, 2016. After conducting an analysis on it, the Department discovered seven images and made a report, which was provided to Ruiz on June 28, 2016. The next day, Ruiz was informed that the laptop and disk with images were in the State's possession and were available for discovery.

The trial court denied Ruiz's motion for continuance, but prohibited the State from using any of the evidence that it stated it did not intend to use during guilt-innocence. The trial court did note that the State could use the prohibited evidence only in the context of impeachment. However, the trial court did not prohibit the usage of the child-pornography images.

Neither at trial nor on appeal did Ruiz argue that he was unfairly surprised or unable to effectively cross-examine any of the State's witnesses. On appeal, Ruiz argues that he "was provided an inadequate opportunity to confer with his computer forensics expert or investigate newly sprung extraneous offenses revealed on the eve of trial." In light of *Heiselbetz*, this is not enough to establish prejudice. *See* 906 S.W.2d at 511-12. Furthermore, the record demonstrates that counsel effectively cross-examined Jeffrey Chappell, the State's computer-forensics expert. Moreover, Ruiz argued the following during closing:

> What proof was it that that pornography was viewed or possessed by Santos Ruiz? Well, I can't tell you who downloaded it, and I can't tell you particularly when it was actually seen. But this is where we got it from. We got it from a lady here shortly before the trial whose daughter is an alleged victim of this offense, and she comes screaming in with this computer, this computer that could have had the hard drive in and out any number of times, this computer that you don't know who had access to, when. You do know, and I will agree I don't have any reason to disagree with the agent that testified, that there are multiple e-mails, multiple pictures of my client contained on that hard drive.
>
> Does that mean he was in possession of each and every file of the seven files of the 700,000 plus that are contained? There's reasonable doubt. That's where I want you to start with and—because you can identify that as reasonable doubt that he was in possession of it.

And interestingly, some of the evidence Ruiz complained about—namely, the jail-phone calls, he used during the cross-examination of one of the State's witnesses.[2] We

---

[2] In particular, the record shows that Ruiz used the jail-phone calls he made with Y.R., the mother of one of his children that he was accused of sexually abusing in New Mexico, to show that Y.R. did not believe that he touched the child with the intent to sexually gratify himself. Additionally, during his cross-

cannot conclude that the foregoing establishes that the trial court abused its discretion in denying Ruiz's motion for continuance. *See id.*; *see also Renteria v. State*, 206 S.W.3d 689, 699 (Tex. Crim. App. 2006) (noting that we review a trial court's denial of a motion for continuance for an abuse of discretion). We therefore overrule his first issue.

## II.     EXCLUSION OF EVIDENCE REGARDING A CHILD PROTECTIVE SERVICES INVESTIGATION

In his second, third, and fourth issues, Ruiz argues that the trial court abused its discretion by excluding evidence he sought to offer during the cross-examination of school counselor Susan Fossler, teacher Jeri Jean Curran, and the complainant's mother showing a CPS investigation of the charged incident that was closed with a notation of "unable to determine."

We review a trial court's decision to exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008). A trial court does not abuse its discretion if any evidence supports its decision. *See Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002). We will uphold the trial court's evidentiary ruling if it was correct on any theory of law applicable to the case. *See De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

---

examination of Y.R., Ruiz highlighted that he had spoken with Y.R. about the incident on the telephone over twenty times before trial.

While cross-examining each of the aforementioned witnesses, Ruiz sought to elicit the results of a CPS investigation of this matter, which, according to Ruiz, resulted in an "unable to determine" finding. Each time Ruiz attempted to do so, the State lodged numerous objections, including hearsay objections. The trial court sustained the State's hearsay objections. Ruiz made bills of exceptions outside the presence of the jury for each witness.

In a similar circumstance, the Dallas Court of Appeals noted the following:

> At a hearing outside the presence of the jury, appellant offered the CPS records showing that CPS had investigated allegations by KS of physical abuse by appellant and "ruled out" physical abuse. He offered the records as business records through Amanda Haines, a CPS master investigator who closed the prior case but did not investigate the allegations.
>
> . . .
>
> One of the objections lodged by the State was that the records contained hearsay within hearsay. We agree. Even when a party lays the proper foundation for admission of a business record, if the business record contains "information from a person who is outside the business and who has no business duty to report or to report accurately, those statements are not covered by the business records exception." *Garcia v. State*, 126 S.W.3d 921, 926-27 (Tex. Crim. App. 2004). Instead, "[t]hose statements must independently qualify for admission under their own hearsay exception[.]" *Id.*
>
> The CPS records appellant sought to introduce contained statements from KS, KS's brother, Mother, Grandmother, appellant, and other relatives of KS. None of those is a CPS employee or had a business duty to report or to report accurately. *See id.* Consequently, after the State objected to the records as containing hearsay within hearsay, appellant's burden was to provide the trial court with an independent hearsay exception for each of those statements he sought to admit into evidence. *Id.* Because appellant

did not do so, the trial court did not abuse its discretion by excluding the records.

*Gregg v. State*, No. 05-16-00557-CR, 2017 Tex. App. LEXIS 4877, at **9-11 (Tex. App.—

Dallas May 26, 2017, pet. ref'd) (mem. op., not designated for publication).

Here, Ruiz did not attempt to admit evidence of the CPS investigation through the

person who did the actual investigation; rather, he sought to proffer this evidence

through witnesses that were not CPS employees and who did not have knowledge of the

investigation. In light of *Gregg*, we conclude that the trial court properly excluded this

evidence as hearsay. *See id.* at **9-11.

And to the extent that Ruiz suggests that the result of the investigation should

have been admitted under the rule of optional completeness, we note that the

aforementioned witnesses did not leave the jury with a false impression. None of them

were aware of the outcome of the CPS investigation. Rather, they merely testified how

the criminal investigation began. In such situations, the Court of Criminal Appeals has

stated the following:

> Hearsay statements are generally not admissible unless the statement falls within a recognized exception to the hearsay rule. Rule 107, the rule of optional completeness, is one such rule. This rule is one of admissibility and permits the introduction of otherwise inadmissible evidence when that evidence is necessary to fully and fairly explain a matter "opened up" by the adverse party. It is designed to reduce the possibility of the jury receiving a false impression from hearing only a part of some act, conversation, or writing. Rule 107 does not permit the introduction of other similar, but inadmissible, evidence unless it is necessary to explain properly admitted evidence. Further, the rule is not invoked by the mere reference to a document, statement, or act. And it is limited by rule 403, which

permits a trial judge to exclude otherwise relevant evidence if its unfair prejudicial effect or its likelihood of confusing the issues substantially outweighs its probative value.

*Walters v. State*, 247 S.W.3d 204, 217-18 (Tex. Crim. App. 2007) (internal footnotes omitted).

Because none of the aforementioned witnesses left the jury with a false impression, but rather described how the criminal investigation began, we are not convinced that the complained-of evidence was admissible under the rule of optional completeness, especially considering none of these witnesses were independently aware of the outcome of the CPS investigation. *See id.* Therefore, based on the foregoing, we cannot say that the trial court abused its discretion by excluding the complained-of testimony. *See Martinez*, 327 S.W.3d at 736. We overrule Ruiz's second, third, and fourth issues.

### III.  ADMISSION OF EVIDENCE OF POSSESSION OF CHILD PORNOGRAPHY AND EXTRANEOUS SEXUAL ASSAULT

In his fifth and sixth issues, Ruiz asserts that the trial court abused its discretion by admitting evidence of possession of child pornography and an extraneous sexual assault without first conducting a hearing outside the presence of the jury. Specifically, Ruiz notes that his fifth issue concerns the admission of evidence of possession of child pornography under Texas Rule of Evidence 404 and that his sixth issue concerns the admission of evidence of an extraneous sexual assault under Texas Code of Criminal Procedure 38.37. *See* TEX. R. EVID. 404; *see also* TEX. CODE CRIM. PROC. ANN. art. 38.37 (West Supp. 2017).

After the complainant's mother testified during the State's case-in-chief, the trial court conducted a hearing outside the presence of the jury concerning the State's request to admit an extraneous offense—that Ruiz's laptop computer contained images of child pornography. At this time, the State asserted the following: "Your Honor, prior to trial, a search was done on—pursuant to a search warrant, on the defendant's computer; and that search discovered several images of child porn, specifically child porn relating to young girls, girls in the approximate age of [R.P.]." The prosecutor believed that defense counsel, through his questioning of the complainant's mother about a disagreement she had with Ruiz regarding an abortion, raised the defensive theory of fabrication. In other words, the defense counsel alleged that R.P. was lying about the incident at her mother's request to get Ruiz in trouble regarding the disagreement over the abortion. The prosecutor then cited several cases authorizing the admission of child-pornography evidence to show intent and to rebut fabrication theories in child-sex cases. In response, defense counsel acknowledged that:

> Judge, I agree we've raised a defensive theory of fabrication. And if we're going to get into this extraneous offense, I anticipate there being a hotly contested hearing outside the presence of the jury as to the admissibility, chain of custody of these items, and the process by which they were obtained. We're trying a child porn case in the middle of this case, if the Court allows it. I do believe that that is more prejudicial than it is probative as well.

The trial court agreed with defense counsel and disallowed the admission of the child-pornography evidence at that point in the trial.

Thereafter, during his case-in-chief, Ruiz denied ever touching R.P. and stated that he only went into R.P.'s room and turned off the closet light. He denied dropping his pants to around his knees. Before the State began its cross-examination of Ruiz, the trial court conducted a second hearing outside the presence of the jury. During this hearing, the prosecutor argued:

> Two things, Judge. By testifying in this case[,] I think the defendant has further opened the door to the child porn evidence. He has got on the stand. He has completely denied this offense, every element of this offense. That opened the door on many levels to evidence of the child porn that was found on his computer.
>
> My intention is to ask him about those things. The case law is very clear on this. I've provided the Court with *Bass* and *Newton*. There's another case, *De La Paz*, that is a well-established case that deals with the doctrine of chances that when the defense is putting forth a fabrication of the defense—as the defense has already stipulated in this case that they have—then we get to rebut that with extraneous conduct. The child porn certainly falls into that category.

(Emphasis added).

In response to the prosecutor's arguments, defense counsel solely objected to the child-pornography evidence under article 38.37 of the Code of Criminal Procedure. However, the above exchanges indicate that, contrary to Ruiz's assertion, the trial court conducted two hearings outside the presence of the jury on the child-pornography evidence. Furthermore, during the second hearing, Ruiz objected to the complained-of evidence under article 38.37 of the Code of Criminal Procedure, not Texas Rule of

Evidence 404. Ultimately, the trial court allowed the State to use the child-pornography evidence in cross-examining Ruiz.

To preserve error for appellate review, a complaining party must make a timely and specific objection. *See* TEX. R. APP. P. 33.1(a)(1); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). Texas courts have held that points of error on appeal must correspond or comport with objections and arguments made at trial. *Dixon v. State*, 2 S.W.3d 263, 273 (Tex. Crim. App. 1998); *see Wright v. State*, 154 S.W.3d 235, 241 (Tex. App.—Texarkana 2005, pet. ref'd). "Where a trial objection does not comport with the issue raised on appeal, the appellant has preserved nothing for review." *Wright*, 154 S.W.3d at 241; *see Resendiz v. State*, 112 S.W.3d 541, 547 (Tex. Crim. App. 2003) (holding that an issue was not preserved for appellate review because appellant's trial objection did not comport with the issue he raised on appeal); *Ibarra v. State*, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999) (same). Because Ruiz's Rule 404 complaint on appeal does not comport with his article 38.37 objection made in the trial court, we cannot say that he has preserved this complaint for appellate review. *See* TEX. R. APP. P. 33.1(a)(1); *see also Resendiz*, 112 S.W.3d at 547; *Ibarra*, 11 S.W.3d at 197; *Dixon*, 2 S.W.3d at 273; *Wright*, 154 S.W.3d at 241.

Regarding the evidence of an extraneous sexual assault that Ruiz purportedly committed against his son, T.R., the trial court, once again, conducted a hearing outside

the presence of the jury before the State began to cross-examine Ruiz. In particular, the following exchange occurred addressing this evidence:

[Prosecutor]: The second thing is there are several other victims, but one in particular that I intend to ask this defendant about is his son[,] [T.R.]. Once again[,] that would be on several grounds, 38.37, which the defense has had notice of defendant's sexual assault of his son—

[Defense counsel]: Stipulated.

[Prosecutor]: —[T.R.] for a better part of a year. He also testified on direct about how, you know, maybe he wasn't the best father to [T.R.] because he hasn't always been there. There's a little bit more to that story. He also sexually assaulted [T.R.]. And I think in light of his testimony on that, we're entitled to go into that as well, Judge.

THE COURT: Do you want to comment, sir?

[Defense counsel]: If we're going to do that, we're going to have to have a hearing. The Judge is going to have to make a determination that that particular evidence could be found beyond a reasonable doubt under 38.37.

[Prosecutor]: I respectfully disagree because at this point we're entitled to introduce that to rebut a defensive theory which the defendant has created, also to impeach testimony that the defendant has testified on direct. No notice is required for that, no hearing is required for that, and I think we're entitled to go into it at this point.

. . .

[Defense counsel]: I'm not even going to make a 403 objection on that. I'll make the confrontation—right to confront an accuser under the Federal Constitution. I'll make an objection as to due course, due process of law under the Texas

and Federal Constitutions that this testimony is allowed.

The trial court overruled Ruiz's objections and allowed the State to use this evidence in their cross-examination of Ruiz.

> A witness may be cross-examined on any relevant matter, including credibility. TEX. R. EVID. 611(b). Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." TEX. R. EVID. 401. Thus, a witness may be cross-examined on an issue that is probative of his credibility. *See Perry v. State*, 236 S.W.3d 859, 867 (Tex. App.—Texarkana 2007, no pet.). Additionally, a party has the right to pursue all avenues of cross-examination reasonably calculated to expose bias, motive, or interest for the witness to testify; therefore, the scope of appropriate cross-examination is necessarily broad. *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996).
>
> . . .
>
> Rule 404(b) of the Texas Rules of Evidence provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." TEX. R. EVID. 404(b)(1). Rule 404(b)(2) provides, however, that such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b)(2).
>
> In *Daggett v. State*, the Court of Criminal Appeals shed light on the inadmissibility of extraneous offense evidence subject to Rule 404(b). 187 S.W.3d 444, 453-54 (Tex. Crim. App. 2005). Specifically, the court addressed the situation of how and when Rule 404(b) applies when a defendant puts his character at issue:
>
> > When a witness makes a broad statement of good conduct or character on a collateral issue, the opposing party may cross-examine the witness with specific instances rebutting that false impression, but generally may not offer extrinsic evidence to prove the impeachment acts. Where, as here, the defendant's statement of

good conduct is directly relevant to the offense charged . . . the opponent may both cross-examine the defendant and offer extrinsic evidence rebutting the statement.   This is not impeachment on a collateral matter.  The statement of good conduct goes to the "heart" of the matter.

*Id.* at 453 n.24.

*Atnipp v. State*, 517 S.W.3d 379, 390-91 (Tex. App.—Eastland 2017, pet. ref'd); *see, e.g. Sanchez v. State*, No. 01-16-00525-CR, 2017 Tex. App. LEXIS 10798, at **9-11 (Tex. App.—Houston [1st Dist.] Nov. 16, 2017, no pet.) (mem. op., not designated for publication) (same).

As noted earlier, Ruiz stated, during the State's case-in-chief, that "we've raised a defensive theory of fabrication."  Thereafter, Ruiz testified that he had never touched any of his children.  This testimony, as well as his characterization of his relationship with T.R., opened the door to the admission of the extraneous-offense evidence.  *See Daggett*, 187 S.W.3d at 453 n.24 ("Where, as here, the defendant's statement of good conduct is directly relevant to the offense charged—i.e., 'I would never have sexual relations with a minor'—the opponent may both cross-examine the defendant and offer extrinsic evidence rebutting the statement.  This is not impeachment on a collateral matter.  The statement of good conduct goes to the 'heart' of the matter." (internal citation omitted)); *see also Sanchez*, 2017 Tex. App. LEXIS 10798, at **10-11 (concluding that the trial court did not abuse its discretion by allowing the State to introduce evidence of Sanchez's disciplinary record after Sanchez opened the door by voluntarily "paint[ing] the picture

of . . . having a spotless disciplinary record during his teaching career. He denied having any inappropriate contact with the female students and suggested that the Aldine school officials had fabricated the allegations against him).

Given the above, we cannot say that the trial court abused its discretion by admitting extraneous-offense evidence pertaining to Ruiz's sexual assault of his son, T.R., during the State's cross-examination of Ruiz. And to the extent that Ruiz complains that the trial court committed error by failing to have an article 38.37 hearing to determine if the State could prove the extraneous offense beyond a reasonable doubt, we note that any error associated with failing to conduct an article 38.37 hearing on this evidence is harmless because the jury in this case was instructed to consider the complained-of evidence only if the State had proved them beyond a reasonable doubt, and because Ruiz has not pointed to evidence demonstrating that the jury failed to follow the charge instructions. *See, e.g., Asberry v. State*, No. 10-08-00237-CR, 2009 Tex. App. LEXIS 8512, at **20-21 (Tex. App.—Waco Nov. 4, 2009), *aff'd*, No. PD-0257-10, 2011 Tex. Crim. App. Unpub. LEXIS 101 (Tex. Crim. App. Feb. 16, 2011) ("Additionally, the jury was instructed in the charge that they were only to consider any extraneous offenses if the State had proved them beyond a reasonable doubt. On appeal, we generally presume the jury followed the trial court's instructions as presented in the charge. To rebut this presumption, Jones is required to point to evidence the jury failed to do so. Asberry has

made no such showing.  We overrule issue five.").  Accordingly, we overrule Ruiz's fifth

and sixth issues.

## IV.  ADMISSION OF EVIDENCE FROM A COMPUTER FORENSICS EXPERT

In his seventh issue, Ruiz complains that the trial court abused its discretion by

failing to hold a hearing outside the presence of the jury to determine the qualifications

of Chappell, the State's computer-forensics expert called during the rebuttal of Ruiz's

defensive theory.  As such, Ruiz asserts that Chappell's testimony and the evidence

documenting the child pornography on Ruiz's computer should have been excluded.  We

disagree.

The record reflects that Ruiz requested a hearing to qualify Chappell immediately

before the State was to cross-examine him.  The trial court overruled Ruiz's request and

allowed the State to "use these issues in cross-examination."  Later, after Ruiz rested his

case-in-chief, the State called Chappell to testify in rebuttal.  Before he was allowed to

testify, the trial court provided a limiting instruction to the jury regarding the

consideration of extraneous-offense evidence.  At this time, Ruiz did not request a

hearing to determine Chappell's qualifications, nor did Ruiz object to Chappell testifying

at this time.  Because Ruiz did not renew his request for a hearing or lodge an objection

to Chappell's testimony at the time the State called Chappell to testify, we conclude that

any complaint on appeal about Chappell's qualifications is waived.  *See* TEX. R. APP. P.

33.1; *Miller v. State*, 343 S.W.3d 499, 502 n.2 (Tex. App.—Waco 2011, pet. ref'd); *see also*

*Castillo v. State*, No. 10-12-00391-CR, 2014 Tex. App. LEXIS 4761, at *14 (Tex. App.—Waco May 1, 2014, no pet.) (mem. op., not designated for publication).

Moreover, when the State proffered State's Exhibit 7, five different photographs of child pornography seized from Ruiz's laptop, using Chappell as its sponsoring witness, Ruiz stated that he had "no objection." *See Moody v. State*, 827 S.W.2d 875, 889 (Tex. Crim. App. 1992) (concluding that appellant waived his complaint about the inadmissibility of challenged evidence when he responded that he had "no objection" to the admission of the complained-of evidence despite objecting to the same evidence pre-trial). Furthermore, "'[a]n error [if any] in the admission of evidence is cured when the same evidence comes in elsewhere without objection.'" *Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) (quoting *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)); *see Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003) ("In addition, a party must object each time the inadmissible evidence is offered or obtain a running objection."). We overrule Ruiz's seventh issue.

## V.     THE RECORD ON APPEAL

In his eighth issue, Ruiz contends that this Court's July 26, 2017 order erroneously sanctioned the denial of a complete record on appeal of the June 30, 2016 hearing held in magistrate court. As noted in our July 26, 2017 order, the crux of this complaint is as follows:

> Thereafter, on May 3, 2017, we received a letter from Court Reporter Wendy
> L. Kirby about this matter. In her letter, Ms. Kirby expressed difficulty in

preparing, certifying, and filing the Reporter's Record pertaining to the June 30, 2016 hearing held before Magistrate Glynis Gore, a judge who has since resigned her post due to medical issues. According to Ms. Kirby, an electronic recording, rather than a stenographic recording, was made of the hearing. *See* TEX. R. APP. P. 34.6(a)(2). The magistrate court informed Ms. Kirby "that they are not responsible for transcribing those proceedings and attached the electronic recording file to their email response." Ms. Kirby responded that she is "unable to transcribe and certify the proceedings" because she was not present for the June 30, 2016 hearing.

*Ruiz v. State*, No. 10-16-00247-CR (Tex. App.—Waco July 26, 2017, order) (not designated for publication).

In response to Ruiz's request for a new trial due to the unavailability of the certified transcript for the June 30, 2016 magistrate hearing, a majority of this Court noted the following:

Absent a specific request by a party, the court has no duty to provide an official court reporter for the proceedings. *See* TEX. GOV'T CODE ANN. § 52.046(a) (West 2013). However, in his response, Ruiz highlights Texas Rule of Appellate Procedure 13.1, which provides, in relevant part, that "[t]he official court reporter or court recorder must: (a) unless excused by agreement of the parties, attend court sessions and make a full record of the proceedings." TEX. R. APP. P. 13.1. Essentially, Ruiz suggests that the duties expressed in Texas Rule of Appellate Procedure 13.1 trump section 52.046(a) of the Government Code, thus creating a mandatory duty to create a full record of the proceedings unless affirmatively waived.

In a similar circumstance, the Fourteenth Court of Appeals has stated the following regarding an argument that Rule 13 trumps section 52.046(a):

The Texas Court of Criminal Appeals has held otherwise. *See Davis v. State*, 345 S.W.3d 71, 77 (Tex. Crim. App. 2011) (noting that the defendant did not request a court reporter under 52.046(a) and, regardless, "even if Rule 13.1 *does* impose a preliminary burden on the *trial court* to ensure the presence of a court reporter at all proceedings, our case law also imposes an additional, independent

burden on the appealing party to make a record demonstrating that error occurred in the trial court. This includes a burden to object when the official court reporter is not present, as he is required to be under Rule 13.1, in order to preserve any error that may occur for appeal." (emphasis in original)); *Valle v. State*, 109 S.W.3d 500, 508-09 (Tex. Crim. App. 2003) (holding that even under Rule 13.1 it was incumbent upon the defendant to object if bench conferences were not recorded in order to preserve error for appeal). Therefore, because appellant did not request a court reporter or object to the reporter's failure to record the proceedings, any right to a record of the punishment hearing was forfeited.

*Satterfield v. State*, 367 S.W.3d 868, 871 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd).

The Amarillo Court of Appeals has also noted the following regarding the absence of a hearing transcript:

Second, we agree with the State that error preservation requirements are fatal to appellant's contention on direct appeal. Appellant's contention runs afoul of error preservation requirements on two levels. First, on a procedural level, if appellant is correct that the court reporter failed to record challenges for cause or other events leading to the dismissal of a member of the venire, and if appellant desired them to be recorded, it was for him to raise a complaint with the trial court. *See Valle v. State*, 109 S.W.3d 500, 508-09 (Tex. Crim. App. 2003) (holding party must object in trial court to preserve appellate complaint about failure to record bench conferences); *cf. Davis v. State*, 345 S.W.3d 71, 77 n.22 (Tex. Crim. App. 2011) (quoting GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 43.302 (2d ed. 2001), at 576 ("a party should not be permitted to ignore at the time a court reporter's dereliction of duty and later rely on that dereliction to challenge a conviction")). The appellate record contains no objection presented to the trial court complaining of any matter related to the court reporter or the taking of the record.

*Ham v. State*, 355 S.W.3d 819, 822-23 (Tex. App.—Amarillo 2011, pet. ref'd); *see Newman v. State*, 331 S.W.3d 447, 450 (Tex. Crim. App. 2011) ("The record appellant presented, however, contains no reporter's record of any hearing

that may have occurred on June 26, 2008. This record also does not show whether appellant objected in the event that the court reporter was not present to transcribe the June 26, 2008 hearing. . . . We decide that appellant has failed to present a record demonstrating that the trial court's decision should be overturned. With appellant having had a hearing, having lost in the trial court on his speedy-trial claim, and then having presented no record at all of a June 26, 2008 hearing on this claim, appellant should also have lost on direct appeal." (internal citations omitted)).

In addition to the foregoing, we note that section 54.309 of the Government Code provides that: "At the request of a party in a felony case, the court shall provide a court reporter to record the proceedings before the magistrate." TEX. GOV'T CODE ANN. § 54.309 (West 2013). Therefore, like before, the failure to request a court reporter/recorder or object to a reporter's failure to record a hearing before a magistrate forfeits any right to a record of that hearing.

Here, Ruiz states that he "timely requested a reporter's record"; however, other than his request for the reporter's record on appeal, there is no indication that he requested that a court reporter transcribe the June 30, 2016 hearing at the time the hearing was conducted.[3] The record also does not show that Ruiz objected to the purported failure of the trial court to provide a court reporter to transcribe the June 30, 2016 hearing at the time of the hearing. Therefore, given the above, we decline to order a new trial, as requested by Ruiz in his response filed in this Court on May 30, 2017. Moreover, we order Ruiz to file his appellant's brief within thirty days of the filing of the July 7, 2016 hearing transcript.

*Id.*

We stand by the analysis contained in our July 26, 2017 order. Nowhere in the trial-court record did Ruiz: (1) request a court reporter to transcribe the June 30, 2016 hearing; or (2) object to the purported failure of the trial court to provide a court reporter

---

[3] It is also of note that the docket sheet reflects that the State and Ruiz put their plea offers on the record at the June 30, 2016 hearing.

to transcribe the June 30, 2016 hearing, though the transcript of the July 7, 2016 hearing reflects that Ruiz re-urged his motion for continuance that was originally asserted during the June 30, 2016 hearing. Like the motion for continuance, Ruiz could have raised his complaint about the June 30, 2016 record at the July 7, 2016 hearing; however, he chose to raise this complaint for the first time on appeal. Additionally, we emphasize that Ruiz has indicated on appeal that he needs the transcript of the June 30, 2016 hearing to address his complaint about the trial court's denial of his motion for continuance. Yet, as shown above in Ruiz's first issue, we do not need the record from the June 30, 2016 hearing to confirm that the trial court did not abuse its discretion in denying Ruiz's motion for continuance. Accordingly, we cannot say that Ruiz has demonstrated any prejudice from the absence of a certified transcript of the June 30, 2016 hearing. We therefore overrule Ruiz's eighth issue.

## VI. CONCLUSION

Having overruled all of Ruiz's issues on appeal, we affirm the judgment of the trial court.


AL SCOGGINS
Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
*(Chief Justice Gray dissenting with a note)
Affirmed
Opinion delivered and filed April 11, 2018
Do not publish
[CRPM]

*(Chief Justice Gray is concerned that the lack of a complete record will forever plague the review of this proceeding. In particular, the hearing that has not been transcribed is the real time recording of appellant's effort to obtain a continuance after the State had "dumped" discovery on him only days before trial. This discovery included extraneous offenses, an out-of-state witness and statements, recorded telephone calls, and technical electronic evidence for which a computer expert would be essential. He dissented to this Court's prior order quoted at length herein and finds the constraints thus placed on his ability to conduct a proper review of the appellant's other issues overwhelming. Unable to join the opinion affirming the judgment, he is left with no option other than to respectfully dissent. A separate opinion will not be issued.)

