

# IN THE
# TENTH COURT OF APPEALS

### No. 10-20-00091-CR

**BRANDON DUANE MCDANIEL JR.,**

                      **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                      **Appellee**

---

### From the 12th District Court
### Walker County, Texas
### Trial Court No. 28524

---

## MEMORANDUM OPINION

---

In three issues, appellant, Brandon Duane McDaniel Jr., complains that the trial court abused its discretion by: (1) sustaining the State's objection to his request for the psychiatric and mental-health records of Officer Joshua Warvel of the Huntsville Police Department by way of a timely-filed subpoena duces tecum; (2) not allowing him to cross-examine Officer Warvel about whether he suffers from post-traumatic stress disorder; and (3) sustaining the State's objection to his request for the Huntsville Police

Department policy or procedural manual. Because we overrule all of appellant's issues on appeal, we affirm.

## Background

Charging appellant with aggravated assault against a public servant, the indictment alleged that appellant intentionally and knowingly threatened Officer Warvel with imminent bodily injury by shooting a firearm in Officer Warvel's direction while knowing that Officer Warvel was a public servant. Approximately a week prior to the guilt-innocence phase of trial, appellant filed a "Notice of Subpoena Duces Tecum" to compel the State to produce the following information:

1. All POLICE RECORDS dealing with Joshua Warvel, former Huntsville Officer . [sic] #262, including but not limited to his disciplinary reports, personnel files, certifications, service records, medical history, psychiatric or mental health records and any and all arrest or other reports pertaining to Joshua Warvel during his time of employment with Huntsville Police Department.

2. A copy of the most recent and current edition of the Huntsville Police Department policy or procedural manual which outlines the protocol that officers are to adhere to when executing their duties.

The City of Huntsville and Sergeant Roy Moore of the Huntsville Police Department, neither of which were parties to this proceeding, objected to both requests for production. The trial court sustained both of the objections.

This matter proceeded to trial before a jury. At the conclusion of the evidence, the jury found appellant guilty of the charged offense. The trial court assessed punishment

at forty years' incarceration in the Institutional Division of the Texas Department of Criminal Justice.

Thereafter, appellant filed a motion for new trial, which the trial court denied after a hearing. The trial court also certified appellant's right of appeal, and this appeal followed.

## Appellant's Subpoena Duces Tecum

In his first and third issues, appellant complains about the trial court's adverse rulings regarding his requests that the State produce Officer Warvel's psychiatric and mental-health records and the Huntsville Police Department policy or procedural manual. Specifically, appellant asserts that the failure to produce this information constituted a violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).[1]

### STANDARD OF REVIEW & APPLICABLE LAW

A defendant in a criminal case has no general right to pre-trial discovery of evidence in the State's possession. *See Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S. Ct. 837, 51 L. Ed. 2d 30 (1977) ("There is no general constitutional right to discovery in a

---

[1] It is worth noting that, in his first and third issues, appellant does not assert an argument under article 39.14 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14. Moreover, there is nothing in the record indicating that appellant made a request to discover Officer Warvel's psychiatric and mental-health records and the Huntsville Police Department policy or procedural manual under article 39.14. Therefore, we analyze appellant's first and third issues only within the context of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), which appellant first raised in his motion for new trial.

criminal case, and *Brady* did not create one."); *see also Pena v. State*, 353 S.W.3d 797, 809 n.10 (Tex. Crim. App. 2011). However, there exists a federal constitutional right to certain minimal discovery under *Brady* and its progeny. *See United States v. Bagley*, 473 U.S. 667, 675, 105 S. Ct. 3375, 3379-80, 87 L. Ed. 2d 481 (1985) ("The prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial."); *United States v. Agurs*, 427 U.S. 97, 108-09, 96 S. Ct. 2392, 2399-400, 49 L. Ed. 2d 342 (1976); *Pena*, 353 S.W.3d at 809. This federal constitutional right is violated only if: (1) the State failed to disclose evidence, regardless of the prosecution's good or bad faith; (2) the withheld evidence is favorable to the accused; and (3) the evidence is material—that is, there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002).

A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. *Ex parte Kimes*, 872 S.W.2d 700, 702-03 (Tex. Crim. App. 1993) (citing *United States v. Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 3383, 87 L. Ed. 2d 481 (1985)). Moreover, "[f]avorable evidence includes exculpatory evidence and impeachment evidence." *Ex parte Chaney*, 563 S.W.3d 239, 266 (Tex. Crim. App. 2018) (citing *Bagley*, 473 U.S. at 676, 105 S. Ct. at 3380-81). "Exculpatory evidence justifies, excuses, or clears a defendant from fault. Impeachment evidence disputes, disparages, denies, or contradicts other evidence." *Id.* (citing *Harm v. State*, 183 S.W.3d 403, 408 (Tex.

Crim. App. 2006)).  Impeachment evidence includes information that tends to discredit the testimony of witnesses for the State.  *See Giglio v. United States*, 405 U.S. 150, 154-55, 92 S. Ct. 763, 766, 31 L. Ed. 2d 104 (1972).  "[A] subpoena duces tecum is not to be used as a discovery weapon, but as an aid to discovery based upon a showing of materiality and relevance."  *Ealoms v. State*, 983 S.W.2d 853, 859 (Tex. App.—Waco 1998, pet. ref'd) (internal citations omitted); *see* TEX. CODE CRIM. PROC. ANN. art. 24.02 (authorizing the issuance of a subpoena duces tecum to direct a particular witness to produce in court writings and other things in his possession).

Upon a plausible showing that the subpoenaed documents are material and favorable to the defense, the documents must be provided to the defendant unless the documents are privileged or confidential.  *Pennsylvania v. Ritchie*, 480 U.S. 39, 60-61, 107 S. Ct. 989, 1002-03, 94 L. Ed. 2d 40 (1987).  When a party seeks to compel the production of confidential or privileged documents, the trial court is required to conduct an in camera inspection of those documents prior to ordering their disclosure.  *See In re Moore*, 615 S.W.3d 162, 169 (Tex. App.—Austin 2019, no pet.) (citations omitted); *see also Ritchie*, 480 U.S. at 60-61, 107 S. Ct. at 1002-03; *United States v. Nixon*, 418 U.S. 683, 713-14, 94 S. Ct. 3090, 3110, 41 L. Ed. 2d 1039 (1974) (approving of the trial court's procedure of ordering "an in camera examination of the subpoenaed material" that the trial court considered to be "presumptively privileged"); *Thomas v. State*, 837 S.W.2d 106, 114 (Tex. Crim. App. 1992).  However, an in camera inspection is not required unless the defendant establishes

a basis for his claim that the documents contain material and favorable evidence. *See Ritchie*, 480 U.S. at 58 n.15, 107 S. Ct. at 1002; *see also United States v. Valenzuela-Bernal*, 458 U.S. 858, 867, 102 S. Ct. 3440, 3446, 73 L. Ed. 2d 1193 (1982) ("He must at least make some plausible showing of how their testimony would have been both material and favorable to his defense.").

**DISCUSSION**

As stated above, the trial court sustained the objections to appellant's requests for production of Officer Warvel's psychiatric and mental-health records, as well as the Huntsville Police Department policy or procedural manual. And because appellant did not make a bill of exception or attempt to procure the complained-of evidence in another way, the record does not contain the complained-of evidence in any form.

In any event, appellant asserted at trial that he was entitled to Officer Warvel's record as a police officer, as well as his mental-health and psychiatric records, because Officer Warvel was the alleged victim in the case. On this record, the trial court could reasonably conclude that the information requested by appellant in the subpoena—all of Officer Warvel's police records—was overbroad. *See* TEX. GOV'T CODE ANN. § 552.102(a) (excepting information in a personnel file which would constitute a clearly unwarranted invasion of personal privacy from public disclosure); *Page v. State*, 7 S.W.3d 202, 206-08 (Tex. App.—Fort Worth 1999, pet. ref'd) (concluding that the defendant did not make a plausible showing that evidence of alleged DWI task force quotas and an officer's arrest

reports were material and favorable to his defense); *see also Hughes v. State*, No. 01-11-00282-CR, 2012 Tex. App. LEXIS 5658, at **6-8 (Tex. App.—Houston [1st Dist.] July 12, 2012, pet. ref'd) (mem. op., not designated for publication) (concluding that a subpoena that did not explain the materiality or relevance of the items requested was overbroad).

Additionally, regarding Officer Warvel's mental-health and psychiatric records, appellant asserted at trial that the subpoenaed documents were relevant to determine whether Officer Warvel was treated for post-traumatic stress disorder ("PTSD") and whether he was mistaken about being fired at because he allegedly suffers from PTSD. However, appellant indicated that he did not have any evidence that Officer Warvel was being treated for PTSD. Rather, appellant stated that he had "a very strong suspicion."

Further, the testimony of Officer Warvel belies appellant's "very strong suspicion." Specifically, Officer Warvel recounted that he could hear a bullet whizz by him based on his experience,

> in a very combatic [sic] area when I was deployed in Afghanistan, and then as well as in training environments, being in the military, we've had the unfortunate event of always having the understanding of what it sounds like to hear a gun go off, as well as we've also heard what it sounds like for bullets to go approximately in a close distance to us as well as over our head.
>
> Due to having been exposed to this already, I absolutely knew at that time what—what just occurred. But at the same time I was in a complete state of shock not understanding that I'm more in a civilian realm, in a civilian world where I'm no longer deployed to Afghanistan and was unsure why, you know, I was—like did this really just happen? I just got shot at in my community? So at that time, I was in a state of shock as well as looking for self preservation and preservation of the community.

On cross-examination, Officer Warvel acknowledged that he had been shot at "[c]ountless" times while deployed in Afghanistan. In fact, he "received a combat action ribbon, which indicates that [he] was involved in a combat incident." When asked if being shot at was traumatic, Officer Warvel responded, "I would say it was not traumatic, it was just doing my job." Appellant then asked whether Officer Warvel had been treated for PTSD, and Officer Warvel responded, "I'd rather, if I don't have to, disclose my VA records."

Nothing in the record suggests that Officer Warvel experienced trauma or was treated for PTSD before the shooting incident involving appellant that serves as the basis of this case and that Officer Warvel's mental condition at the time affected his perception of the events. Appellant only insinuates that Officer Warvel may have been treated for PTSD at some time prior to the shooting incident.

Regardless, appellant did not demonstrate that, in light of all the evidence, it is reasonably probable that the outcome of the trial would have been different had the prosecutor made a timely disclosure of Officer Warvel's mental-health and psychiatric records. *See Webb v. State*, 232 S.W.3d 109, 115 (Tex. Crim. App. 2007); *see also Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002). As such, we conclude that the trial court did not abuse its discretion by determining that appellant did not establish a *Brady* violation. *See Webb*, 232 S.W.3d at 115 ("'The mere possibility that an item of undisclosed evidence might have helped the defense, or might have affected the outcome of the trial,

does not establish materiality in the constitutional sense.'" (quoting *Hampton*, 86 S.W.3d at 612)). We overrule appellant's first and third issues.

## Officer Warvel's Testimony

In his second issue, appellant argues that the trial court abused its discretion by not allowing him to cross-examine Officer Warvel about whether he has PTSD related to being under fire while deployed in Afghanistan. Appellant contends that the trial court denied him of the ability to present a complete defense and of his right to confrontation, in violation of the Sixth and Fourteenth Amendments to the United States Constitution. *See* U.S. CONST. amends. VI, XIV.

### THE CONFRONTATION CLAUSE OF THE UNITED STATES CONSTITUTION

We first analyze appellant's contention regarding the Confrontation Clause of the Sixth Amendment to the United States Constitution. The record reflects that the State objected to appellant's line of questioning regarding Officer Warvel's possible PTSD diagnosis and treatment. In response to the State's objection, appellant stated that he desired to pursue this line of questioning to establish whether or not Officer Warvel was mistaken about being fired at because he suffers from PTSD. The trial court sustained the State's objection, and appellant did not complain about the trial court's ruling, nor did he attempt to make an offer of proof.

To preserve error for appellate review, a complaining party must make a timely and specific objection. *See* TEX. R. APP. P. 33.1(a)(1); *Wilson v. State*, 71 S.W.3d 346, 349

(Tex. Crim. App. 2002). Texas courts have held that points of error on appeal must correspond or comport with objections and arguments made at trial. *Dixon v. State*, 2 S.W.3d 263, 273 (Tex. Crim. App. 1998); *see Wright v. State*, 154 S.W.3d 235, 241 (Tex. App.—Texarkana 2005, pet. ref'd). "Where a trial objection does not comport with the issue raised on appeal, the appellant has preserved nothing for review." *Wright*, 154 S.W.3d at 241; *see Resendiz v. State*, 112 S.W.3d 541, 547 (Tex. Crim. App. 2003) (holding that an issue was not preserved for appellate review because appellant's trial objection did not comport with the issue he raised on appeal).

Here, appellant's Confrontation-Clause complaint on appeal does not comport with the arguments made at trial. As such, we cannot say that appellant has preserved his Confrontation-Clause complaint for appellate review. *See* TEX. R. APP. P. 33.1(a)(1); *see also Resendiz*, 112 S.W.3d at 547; *Dixon*, 2 S.W.3d at 273; *Wright*, 154 S.W.3d at 241.

**APPELLANT'S RIGHT TO PRESENT A COMPLETE DEFENSE**

We now address appellant's contention that he was denied the ability to present a complete defense.

**Preservation**

Texas Rule of Evidence 103(a)(2) provides that a party may claim error in a ruling to exclude evidence only if the error affects a substantial right of the party and the party informs the trial court of the substance of the evidence by an offer of proof, unless the substance is apparent from the context. *See* TEX. R. EVID. 103(a)(2). As stated above,

appellant did not complain about the trial court's ruling on the State's objection to his line of questioning pertaining to Officer Warvel's possible diagnosis and treatment of PTSD, nor did he attempt to make an offer of proof.

Despite appellant failure to make an offer of proof under Texas Rule of Evidence 103(a)(2), the Court of Criminal Appeals has outlined the following exception to the Rule 103(a)(2) offer of proof:

> Instead, we offer this clarification of the exception: where the defendant, in cross-examining a State's witness, desires to elicit subject matters that tend to impeach the witness's character for truthfulness—for example, to show malice, ill-feeling, ill-will, bias, prejudice, or animus on the part of the witness toward the defendant—in order to preserve the issue for appellate review, he is not required to show that his cross-examination would have affirmatively established the facts sought, but merely that he desired to examine the witness with regard to those specific subject matters that tend to impeach the witness during his cross-examination.

*Holmes v. State*, 323 S.W.3d 163, 170 (Tex. Crim. App. 2009).

In the instant case, appellant notified the trial court of his desire to cross-examine Officer Warvel about whether or not he was mistaken about being fired at because he suffers from PTSD. This appears to satisfy the exception to Rule 103(a)(2), as articulated in *Holmes*. *See id.*; *see also* TEX. R. EVID. 103(a)(2). Accordingly, we conclude that appellant preserved this complaint for review. We now analyze the merits of appellant's complaint that he was denied the opportunity to present a complete defense.

**Standard of Review & Applicable Law**

We review a trial court's decision to limit or exclude topics from cross-examination under an abuse-of-discretion standard. *Johnson v. State*, 490 S.W.3d 895, 917 (Tex. Crim. App. 2016); *see Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009) (noting that the "trial judge has wide discretion in limiting the scope and extent of cross-examination"). Likewise, we review a trial court's decision on the admissibility of evidence under an abuse-of-discretion standard. *Johnson*, 490 S.W.3d at 908. We uphold the trial court's ruling if it was correct on any applicable theory of law. *Id.* We reverse that ruling only if it "falls outside the zone of reasonable disagreement." *Id.*

"A defendant's constitutional right to a meaningful opportunity to present a complete defense is rooted in the Fourteenth Amendment's Due Process Clause and the Sixth Amendment's Compulsory Process and Confrontation Clauses." *Anderson v. State*, 301 S.W.3d 276, 280 (Tex. Crim. App. 2009). Here, appellant complains that the trial court denied him the opportunity to present a complete defense by improperly limiting his cross-examination of Officer Warvel.

Trial judges may place limitations on the scope and extent of cross-examination so long as those limitations do not infringe on the Confrontation Clause's guarantee of "an opportunity for effective cross-examination." *Johnson*, 490 S.W.3d at 909. Wide latitude is afforded to trial judges' restrictions on cross-examination based on criteria such as "harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that

is repetitive or only marginally relevant." *Id.* at 910 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986)). However, the Constitution "could be offended if a state evidentiary rule prohibited the defendant from cross-examining a witness concerning possible motives, bias, and prejudice to such an extent [that] he could not present a vital defensive theory." *Id.*

Cross-examination "to show that [a] witness has suffered a recent mental illness or disturbance is proper, provided that such mental illness or disturbance is such that it might tend to reflect upon the witness's credibility." *Virts v. State*, 739 S.W.2d 25, 30 (Tex. Crim. App. 1987). But "the mere fact that the State's testifying witness has in the recent past suffered or received treatment for a mental illness or disturbance does not, for this reason alone, cause this kind of evidence to become admissible impeachment evidence." *Id.* The admissibility of mental-illness evidence is necessarily an ad hoc decision, and "great deference" is given to the trial court's decision on admissibility. *Id.* In determining whether mental-illness evidence is relevant, courts look to the purpose for offering the evidence and whether there is a direct or logical connection between that evidence and the proposition to be proved. *Goodwin v. State*, 91 S.W.3d 912, 917 (Tex. App.—Fort Worth 2002, no pet.).

An evidentiary ruling that denies a criminal defendant the constitutional right to present a complete defense is subject to a harm analysis. *Potier v. State*, 68 S.W.3d 657, 666 (Tex. Crim. App. 2002) (noting that "the specific rule that applies to this error in

admitting evidence is Rule of Evidence 103(a)," which states that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected" and that "the standard of review under that rule is the same as that under Rule of Appellate Procedure 44.2(b)"). Exclusion of evidence in a criminal trial should be disregarded unless it is constitutional error or non-constitutional error that substantially affects the defendant's rights. *See* TEX. R. APP. P. 44.2(a)-(b). When a defendant's evidence is excluded, it is constitutional error "only if the evidence forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Potier*, 68 S.W.3d at 665. Therefore, exclusion is not prejudicial if the defendant was not prevented from presenting the substance of his defense to the jury. *Id.*

**Discussion**

In the instant case, appellant presented no evidence that Officer Warvel suffered from a mental illness or disturbance at or near the time of the shooting incident or in the remote past. Furthermore, appellant presented no evidence that Officer Warvel's mental condition at the time of the shooting incident affected his perception of the events. *See Scott v. State*, 162 S.W.3d 397, 401-02 (Tex. App.—Beaumont 2005, pet. ref'd) (concluding that the trial court did not abuse its discretion by not permitting the jury to hear evidence of a State's witness's mental illness where there was no evidence that the mental illness or disturbance affected the witness's perception of the events) (citing *Lagrone v. State*, 942

S.W.2d 602, 613 (Tex. Crim. App. 1997) (stating that, to pursue impeachment of a witness's perceptual capacity with evidence of drug addiction, counsel must demonstrate actual drug-based impairment during the witness's observation of the crime)); *see also Virts*, 739 S.W.2d at 30 ("On the other hand, if the witness's mental illness or mental disturbance occurred in the remote past, and there is no showing that such has revived, the fact that the witness has suffered in the remote past a mental illness or mental disturbance should not be admitted into evidence because such would probably be totally irrelevant and immaterial to the defendant's trial."). We therefore cannot say that the trial court abused its discretion by not permitting the jury to hear this evidence. *See Johnson*, 490 S.W.3d at 917; *see also Hammer*, 296 S.W.3d at 561. Moreover, after reviewing the entire record, including the theories advanced by the defendant at trial, we cannot conclude that the trial court's decision to exclude this topic from cross-examination prevented appellant from presenting a complete defense. *See Johnson*, 490 S.W.3d at 910. We overrule appellant's second issue.

## Conclusion

We affirm the judgment of the trial court.

MATT JOHNSON
Justice

Before Chief Justice Gray,
    Justice Johnson,
    and Visiting Justice Davis[2]
(Chief Justice Gray concurring with a note)*
Affirmed
Opinion delivered and filed August 18, 2021
Do not publish
[CRPM]

*(Chief Justice Gray concurs in the Court's judgment to the extent it affirms the trial court's judgment.  A separate opinion will not issue.)



---

[2] The Honorable Rex Davis, Senior Justice (Retired) of the Tenth Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court.  *See* TEX. GOV'T CODE ANN. §§ 74.003, 75.002, 75.003.

McDaniel v. State                                                                                    Page 16